## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Bankruptcy Case No. 01-10578 (JKF) |
| T&N LIMITED, *et al.*, | ) | |
| | ) | |
| | ) | |
| Reorganized Debtors. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT | ) | Civil Action Nos. 08-0229 and 08-0230 |
| LLOYD'S LONDON, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | Judge Joseph H. Rodriguez |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL-MOGUL | ) | |
| GLOBAL INC., *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## BRIEF OF THE LEGAL REPRESENTATIVE
## FOR FUTURE ASBESTOS CLAIMANTS

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (DE Bar No. 2202)
Edwin J. Harron (DE Bar No. 3396)
Travis N. Turner (DE Bar No. 4926)

The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to Eric D. Green,*
*Legal Representative for Future Asbestos Claimants*

## Table of Contents

|  |  | Page |
|---|---|---|
| I. | Introduction | 2 |
| II. | Background Summary of the Dual Order Process | 3 |
| III. | Argument | 11 |
|  | A. | The Court Below was Authorized to Issue the Preemption Order, Which was Properly Before the Court as a Contested Matter. ... 11 |
|  | B. | Certain Appellants Waived the Right to an Adversary Proceeding and Suffered no Prejudice Below by Resolving the Assignment and Preemption Issue as a Contested Matter ... 12 |
|  | C. | The Preemption Order was not a Declaratory Judgment ... 14 |
|  | D. | The Assignment and Preemption Issue was a Ripe Dispute ... 16 |
|  | E. | It was Appropriate for the Bankruptcy Court to Decide the Assignment and Preemption Issue in the Context of a Contested Matter ... 19 |
| IV. | Conclusion | 22 |

**TABLE OF AUTHORITIES**

Page

**Cases**

Applewood Chair Co. v. Three Rivers Planning & Dev. Dist.
(In re Applewood Chair Co.), 203 F.3d 914 (5th Cir. 2000) ............................................ 15, 16

Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),
372 F.3d 154 (3d Cir. 2004) ................................................................................ 14

Estate of Lellock v. Prudential Insurance Co. of Am.,
811 F.2d 186 (3d Cir. 1987) ................................................................................ 14

Evcco Leasing Corp. v. Ace Trucking Co.,
828 F.2d 188 (3d Cir. 1987) ................................................................................ 12

Fidelity Nat'l Title Ins. Co. v. Bozzuto,
227 B.R. 466 (E.D. Va. 1998) ............................................................................. 19

Halbert v. Yousif (In re Yousif),
201 F.3d 774 (6th Cir. 2000) .............................................................................. 20

In re Amatex Corp.,
107 B.R. 856 (E.D. Pa. 1989) ......................................................................... 16, 20

In re Combustion Eng'g, Inc.,
391 F.3d 190 (3d Cir. 2004) ........................................................................... 14, 15

In re Copper King Inn, Inc.,
918 F.2d 1404 (9th Cir. 1990) ............................................................................ 13

In re Envirodyne Indus.,
174 B.R. 955 (Bankr. N.D. Ill. 1994) .................................................................. 20

In re Federal-Mogul Global, Inc.,
Case No. 01-10578, 2008 Bankr. LEXIS 824 (Bankr. D. Del. Mar. 19, 2008) ........... 2, 11, 16

In re Graham,
1998 Bankr. LEXIS 961 (Bankr. E.D. Pa. Aug. 3, 1998) ....................................... 12

In re Hanson,
397 F.3d 482 (7th Cir. 2005) .............................................................................. 21

In re Kaiser Aluminum Corp.,
343 B.R. 88 (D. Del. 2006) ................................................................................. 15

DB02:6901152.8

059066.1022

In re Norley,
    Case No. 01-37689, 2002 Bankr. LEXIS 743 (Bankr. E.D. Pa. June 24, 2002) ................... 12

In re Vandy, Inc.,
    189 B.R. 342 (Bankr. E.D. Pa. 1995) ................................................................ 14

In re Village Mobile Homes, Inc.,
    947 F.2d 1282 (5th Cir. 1991) ................................................................ 12

In re Zolner, 249 B.R. 287, 292 (N.D. Ill. 2000) ................................................................ 13

Khodara Envtl., Inc. v. Blakey,
    376 F.3d 187 (3d Cir. 2004) ................................................................ 17

Krasny v. Bagga (In re Jamuna Real Estate, LLC),
    365 B.R. 540 (Bankr. E.D. Pa. 2007) ................................................................ 19

Lernout & Hauspie Speech Prods. v. Baker
    (In re Lernout & Hauspie Speech Prods.), 264 B.R. 336 (Bankr. D. Del. 2001) ................. 13

Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),
    188 F.3d 116 (3d Cir. 1999) ................................................................ 21

Midkiff v. Stewart (In re Midkiff),
    342 F.3d 1194 (10th Cir. 2003) ................................................................ 20

NE Hub Partners, L.P. v. CNG Transmission Corp.,
    239 F.3d 333 (3d Cir. 2001) ................................................................ 17, 18

Phoenix Elec. Contracting v. Lovece,
    1993 U.S. Dist. LEXIS 17376 (S.D.N.Y. Dec. 7, 1993) ................................ 18, 19

Public Serv. Co. v. New Hampshire (In re Public Serv. Co.),
    99 B.R. 506 (Bankr. D.N.H. 1989) ................................................................ 17

Surrick v. Killion,
    449 F.3d 520 (3d Cir. 2006) ................................................................ 18

Tenn. Student Assistance Corp. v. Hood,
    541 U.S. 440 (2004) ................................................................ 14

Travelers Ins. Co. v. Obusek,
    72 F.3d 1148 (3d Cir. 1995) ................................................................ 17

**Statutes**

28 U.S.C. § 1334(e) ................................................................ 14

28 U.S.C. § 157(b)(1) ................................................................ 14

    059066.1022

28 U.S.C. § 157 (b)(2)(A) ................................................................................................ 14

28 U.S.C. § 157 (b)(2)(L) ................................................................................................ 14

28 U.S.C. § 157 (b)(2)(M) ............................................................................................... 14

**Rules**

Fed. R. Bankr. P. 7001(1) ............................................................................................... 21

Fed. R. Bankr. P. 7001(6) ............................................................................................... 21

Fed. R. Bankr. P. 7001(9) ............................................................................................... 20

DB02:6901152.8                                                                    059066.1022

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Bankruptcy Case No. 01-10578 (JKF) |
| T&N LIMITED, *et al.*, | ) | |
| | ) | |
| | ) | |
| Reorganized Debtors. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT | ) | Civil Action Nos. 08-0229 and 08-0230 |
| LLOYD'S LONDON, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | Judge Joseph H. Rodriguez |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL-MOGUL | ) | |
| GLOBAL INC., *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

## BRIEF OF THE LEGAL REPRESENTATIVE
## FOR FUTURE ASBESTOS CLAIMANTS

The Legal Representative for Future Asbestos Claimants ("FCR") files this brief

in the above-captioned matter in response to Section 1 of *Certain Appellants' Brief on Appeal* by

Appellant Hartford.[1]  With respect to the balance of *Certain Appellants' Brief on Appeal* and to

the *Brief of Appellants, Certain Underwriters at Lloyd's, London and Certain London Market*

*Companies* [2], the FCR hereby joins the briefs filed by Appellee the Reorganized Debtors and by

Appellee the Official Committee of Asbestos Claimants ("ACC").

---

[1]     Certain Appellants' Brief on Appeal at 13-16.

[2]     Certain Underwriters at Lloyd's, London, and Certain London Market Companies ("LMI") did
not raise on appeal the issues to which this brief responds.

## I.    Introduction

Certain Appellants' contention that the relief granted by the Bankruptcy Court was procedurally defective is utterly without merit.  As the undisputed record makes clear, the Bankruptcy Court carefully and properly ruled on the Assignment and Preemption Issue[3] in the consensual procedural context of a contested matter initiated by Certain Appellants and litigated by the parties for years in a live controversy squarely before the Bankruptcy Court.

Certain Appellants' insistence upon a formal adversary proceeding contradicts the very procedure to which they not only consented but requested.  Certain Appellants initiated the dispute over the Debtors' proposed transfer of certain insurance rights to a section 524(g) trust by objecting to the Third Amended Plan on that ground nearly four years ago.  Since that time, Certain Appellants have been involved in every procedural step leading up to the Bankruptcy Court's resolution of the Assignment and Preemption Issue.  Certain Appellants explicitly requested that the Bankruptcy Court resolve the Assignment and Preemption Issue by way of a separate contested matter when they joined in the filing of the Joint Motion Seeking Determination of Asbestos Insurance Assignment and Preemption Issues Pursuant to Plan (the "Joint Motion").  [D.I. 13499].  *Joint Motion*, ¶ 8.  Certain Appellants further consented to the resolution of the Assignment and Preemption Issue by the Bankruptcy Court (subject to preserving their appeal rights), by stipulating "not to oppose ... entry by the Bankruptcy Court of the Preemption Order...."  *Certain Insurer Preemption Stipulation (as defined below)*, ¶ 1.  At

---

[3]    The Assignment and Preemption Issue is "[w]hether, under the Bankruptcy Code as a matter of law, the [assignment of Asbestos Insurance Policies to a § 524(g) trust] is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law."  In re Federal-Mogul Global, Inc., Case No. 01-10578, 2008 Bankr. LEXIS 824, *2-3 (Bankr. D. Del. Mar. 19, 2008)

DB02:6901152.8

059066.1022

the time they agreed to this stipulation, Certain Appellants did not (and could not) suggest that the Assignment and Preemption Issue was unripe for determination. By their words and deeds, Certain Appellants have waived – and are estopped from raising – the technical, procedural, and jurisdictional arguments asserted in their appellate brief.

The Bankruptcy Court did not need to resort to the Declaratory Judgment Act to resolve the Assignment and Preemption Issue. But even if it did, the Bankruptcy Court's ruling still withstands appellate scrutiny for four reasons – (i) the Assignment and Preemption Issue was ripe for adjudication below, (ii) the matter was fully litigated, (iii) Certain Appellants waived any argument to have the matter heard by adversary proceeding, and (iv) Certain Appellants suffered no unfair prejudice.

## II.    Background Summary of the Dual Order Process

The Debtors, together with representatives of the majority of economic stakeholders at all levels of Federal-Mogul Corporation's capital structure (collectively, the "Plan Proponents"),[4] filed the Third Amended Joint Plan of Reorganization on June 4, 2004 (the "Third Amended Plan"). [D.I. 5121]. The Third Amended Plan was based primarily on an agreement between the Unsecured Creditors Committee[5] and the ACC, which, at its core, provided that 49.9% of the common stock of Reorganized Federal-Mogul would be distributed to the company's prepetition noteholders, and 50.1% of the stock would be placed in a trust established pursuant to Section 524(g) of the Bankruptcy Code for the benefit of holders of asbestos-related personal injury claims and demands (the "Trust"). See Disclosure Statement Describing Third Amended Joint

---

[4]    The Plan Proponents are the Debtors, the Unsecured Creditors Committee, the ACC, the FCR, the Administrative Agent and the Equity Committee.

[5]    Capitalized terms used and not defined herein have the meanings as set forth in the Fourth Amended Joint Plan or Reorganization (As Modified) dated November 5, 2007 [D.I. 13660] as confirmed by the Court, or if not in the Plan, in the briefs in support thereof.

059066.1022

Plan of Reorganization, dated June 4, 2004, at 80 [D.I. 5122]. The Third Amended Plan also provided that holders of asbestos-related personal injury claims and demands would receive the economic benefits of certain of the Debtors' asbestos insurance policies and related asbestos insurance rights and recoveries, by virtue of such insurance policy rights and recoveries being contributed to the Trust. Id.

Certain of the Debtors' insurers objected to the Third Amended Plan on the grounds, among others, that the transfer of asbestos insurance-related assets to the Trust would violate certain anti-assignment provisions in the Debtors' insurance policies and otherwise applicable state law. As a result of the insurers' objections to the confirmation of the Debtors' Third Amended Plan in early 2004, the Assignment and Preemption Issue was joined, and a live case or controversy arose.

The Debtors, the ACC and the FCR subsequently entered into an agreement with certain insurers (including those appealing insurers that submitted Certain Appellants' Brief on Appeal filed in these appeals at Docket No. 13 (the "Certain Appellants")), in which the Debtors, the ACC, and the FCR agreed to certain modifications to the Third Amended Plan, in exchange for the stipulating insurers' agreement to limit their plan confirmation objections and related confirmation discovery. This agreement was memorialized in the Stipulation and Agreed Order, dated June 30, 2006 (the "Certain Insurers' Insurance Stipulation"), which was approved by the Bankruptcy Court by order dated September 19, 2006. [D.I. 10113; D.I. 10606].

Pursuant to the Certain Insurers' Insurance Stipulation, certain insurers (including Certain Appellants) agreed to limit their objections to the Plan to the following two narrow and discrete legal issues:

4

i. Whether, under the Bankruptcy Code as a matter of law, the Assignment[6] is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law; and
ii. Whether the Plan complies with Bankruptcy Code Sections 524(g)(2)(B)(i)(II) and (III).

*Certain Insurers' Insurance Stipulation*, ¶ 3.a.

Consistent with the terms of the Certain Insurers' Insurance Stipulation, on or about June 4, 2007, the Plan Proponents filed the Fourth Amended Joint Plan of Reorganization (as modified, the "Fourth Amended Plan" or "Plan"), which incorporated the modifications to which the Debtors, the ACC, and the FCR had agreed in the Certain Insurers' Insurance Stipulation. The Plan continued to contemplate that certain asbestos insurance-related proceeds, assets and other rights would be contributed to the Trust on the Effective Date of the Plan. *Plan*, §§ 1.1.218, 4.3.

After the filing of the Fourth Amended Plan, the Plan Proponents entered into an agreement with LMI. Similar to the Certain Insurers' Insurance Stipulation, the Plan Proponents agreed to make certain modifications to the Plan in exchange for LMI's agreement to limit its objections to Plan confirmation. This agreement was memorialized in a stipulation dated July 10, 2007 (the "LMI Insurance Stipulation"). [D.I. 13062]. Pursuant to the LMI Insurance Stipulation, the Plan Proponents and LMI agreed that:

> the only issue London Market Insurers will litigate in connection
> with confirmation of the Plan is whether, under the Bankruptcy
> Code as a matter of law, the assignment of any Asbestos Insurance
> Policies or other rights and obligations with respect to, arising
> under, or related to Asbestos Insurance Policies subscribed by
> London Market Insurers, is valid and enforceable against London

---

[6]    The term "Assignment" is defined as "any transfer of Asbestos Insurance Assets, Asbestos Insurance Policies or other rights and obligations with respect to Asbestos Insurance Policies to the Trust under the Plan or the Plan Documents." *Certain Insurers' Insurance Stipulation*, 2.

> Market Insurers notwithstanding (i) anti-assignment provisions in
> or incorporated in the Asbestos Insurance Policies subscribed by
> London Market Insurers and (ii) applicable state law.

*LMI Insurance Stipulation*, ¶ 2.

Both the Certain Appellants and LMI (as well as other insurers) continued to object and litigate the Assignment and Preemption Issue in connection with the confirmation of the Fourth Amended Plan. See, e.g., Briefs appended under Tabs 9a and 9b to the Joint Submission of Plan Objectors' Post-Trial Briefs in Opposition to Confirmation of Fourth Amended Joint Plan of Reorganization and the prior submissions referred to therein ("Post-Trial Brief"). [D.I. 13182]. In response, the Plan Proponents filed briefs in support of the Plan's proposed assignment of certain asbestos insurance-related proceeds, assets and other rights to the Trust, notwithstanding any anti-assignment provisions in the subject insurance policies or otherwise applicable state law to the contrary. [D.I. 582593566; D.I. 13249]. Accordingly, the Assignment and Preemption Issue underlying these appeals was fully joined, briefed and argued as part of the contested proceedings before the Bankruptcy Court respecting the confirmation of the Fourth Amended Plan, and there continued to be a live case or controversy among the parties.

After at least eight days of hearings before the Bankruptcy Court, by the time the Plan confirmation hearings came to a close in early October 2007, the credit markets had deteriorated from the market conditions in place when the Debtors obtained their approximately $3.5 billion exit financing commitment in February 2007. It was therefore in the best interests of the Debtors, their creditors, their interest holders and other parties in interest for the Debtors to achieve a final and non-appealable confirmation order and emerge from bankruptcy by the scheduled expiration of their exit financing commitment on December 31, 2007. It was in this context that, at the conclusion of the October 2, 2007 confirmation hearing, counsel for the ACC

DB02:6901152.8    059066.1022

proposed on the record to potentially "spin off" any ruling on the Assignment and Preemption Issue into a separate order from the confirmation order. See *Oct. 2, 2007 Conf. Hearing Tr.*, 118:16-21. Among other insurers, counsel for Hartford, one of the Certain Appellants in this matter, agreed to consider such an approach. See *Oct. 2, 2007 Conf. Hearing Tr.*, 118:22-23.

The Debtors, the other Plan Proponents and the objecting insurers very soon thereafter began in earnest good-faith negotiations to bifurcate the resolution of the Assignment and Preemption Issue from the confirmation order to facilitate the Debtors' emergence from chapter 11 on a consensual basis prior to December 31, 2007. Importantly, under the terms of the Plan, a ruling on such issue was not an express condition precedent to either the confirmation or effectiveness of the Plan, and thus could be determined separately without impacting the Debtors' ability to cause the Plan to become effective. See *Plan*, §§ 7.1, 7.2.

As a result of these negotiations, Certain Appellants[7], certain other insurers, the Debtors, and the other Plan Proponents filed (or later joined) the Joint Motion on October 17, 2007. The Joint Motion sought to effectuate a consensual process by which the Plan could be confirmed and become effective prior to the expiration of the exit financing commitment, while providing a separate, independent track for the resolution of the Assignment and Preemption Issue and preserving the objecting insurers' right to appeal any such ruling. See *Joint Motion*, ¶¶ 8, 11-12.

Pursuant to the Joint Motion, the joint movants expressly acknowledged that "a clear dispute on the Assignment and Preemption Issue[8] has arisen in connection with the Confirmation

---

[7] Two groups of insurers who are appellants in these cases – Columbia Casualty Company, Continental Casualty Company, and The Continental Insurance Company, both in its individual capacity and as successor to certain interests of Harbor Insurance Company (collectively, the "CNA Entities"), and Fireman's Fund Insurance Company and National Surety Company (collectively, "Fireman's Fund") – did not sign the Joint Motion when originally filed, but subsequently joined the Joint Motion by virtue of the Certain Insurer Preemption Stipulation. *Certain Insurer Preemption Stipulation*, 7th recital, 4. Accordingly, all of the Certain Appellants are now deemed parties to the Joint Motion.

DB02:6901152.8                                                                              059066.1022

of the Plan." <u>Id.</u> The parties further recognized that, in light of their mutual desire to preserve appeal rights without interfering with the effectiveness of the Plan, they were seeking "to have this matter adjudicated and resolved by way of separate contested matter pursuant to this Motion." *Joint Motion*, ¶ 8. Indeed, the joint movants acknowledged that "[t]his Motion … constitutes a contested matter pursuant to Bankr. R. 9014." *Joint Motion*, ¶ 4.

In connection with the resolution of the Joint Motion, a group of insurers (including Certain Appellants) and LMI signed two separate but similar stipulations with the Plan Proponents that, among other things, established the bifurcated procedure by which the Plan could be confirmed and go effective regardless of whether, when or how the separate Assignment and Preemption Issue might ultimately be resolved. <u>See</u> Stipulation and Order Regarding Remaining London Market Objections to the Plan (the "<u>LMI Preemption Stipulation</u>") [D.I. 13670]; Stipulation to Preserve Appeals on the Asbestos Insurance Assignment and Preemption Issue (the "<u>Certain Insurer Preemption Stipulation</u>") [D.I. 13671]. Both stipulations were approved by the Bankruptcy Court on November 8, 2007, and the stipulations are therefore binding on all parties to these appeals. <u>Id.</u>

In particular, under the respective stipulations, LMI, on the one hand, and Certain Appellants, on the other, voluntarily consented to (among other things) the procedure pursuant to which the Assignment and Preemption Issue would be determined by the Bankruptcy Court. For example, in the LMI Preemption Stipulation, LMI stipulated that "[t]he Preemption Issues can be determined by the Bankruptcy Court in a contested matter separate from consideration of

---

[8]     Under the Joint Motion, the "Assignment and Preemption Issue" was based upon "the Plan Assignment Objections filed by the Objecting Insurers, on the one hand; and, the position of the Plan Proponents, on the other hand – that the assignment of rights in certain insurance policies to the Trust is valid and enforceable under Sections 524(g), 541(c)(1) and/or 1123(a)(5)(B) of the Bankruptcy Code, which, the Plan Proponents contend, preempt any anti-assignment provisions and any state law defenses that may be provided under the insurance policies and applicable state law." *Joint Motion*, ¶ 8.

DB02:6901152.8                                                                                              059066.1022

confirmation of the Plan, while preserving any appeal by LMI of an adversary ruling on the LMI

Preemption Issue." *LMI Preemption Stipulation*, ¶ 1.  Through the Joint Motion, however,

Certain Appellants had already agreed to the procedure for adjudicating the "Assignment and

Preemption Issue" (as defined therein). *Joint Motion*, ¶¶ 4, 8 ("This Motion … constitutes a

contested matter pursuant to Bankr. R. 9014. … [A] clear dispute on the Assignment and

Preemption Issue has arisen in connection with the Confirmation of the Plan. … [T]he parties

have sought to have this matter adjudicated and resolved by way of separate contested matter

pursuant to this Motion.")  Accordingly, in the Certain Insurer Preemption Stipulation, Certain

Appellants also agreed that "[t]he Stipulating Insurers shall not oppose … entry by the

Bankruptcy Court of the Preemption Order, provided, however, that the Stipulating Insurers

preserve all rights to appeal the Preemption Order."[9] *Certain Insurer Preemption Stipulation*,

¶ 1.

> In addition, each stipulation contained explicit language recognizing the separateness of

the Confirmation Order (defined below) from the resolution of the Assignment and Preemption

Issue. <u>See</u> *Certain Insurer Preemption Stipulation*, ¶ 2 ("The Plan Proponents shall request that

the Court include in the Confirmation Order a provision providing that such Confirmation Order

does not constitute or contain a ruling on Plan Assignment Objections or the Assignment and

Preemption Issue."); *LMI Preemption Stipulation*, ¶ 3 ("The Confirmation Order will expressly

---

[9]      The term "Preemption Order" as used in the Certain Insurer Preemption Stipulation referred to a
stipulated form of proposed order attached to the Joint Motion providing, among other things, that (i)
"[t]he transfer and assignment of the Asbestos Insurance Actions, the Asbestos Insurance Action
Recoveries, and the Asbestos In-Place Insurance Coverage by the Debtors to the Trust pursuant to the
Plan, including, without limitation, Section 4.3 thereof, is valid and enforceable, and binding upon all
Persons, including each of the counterparties to or under any applicable Asbestos Insurance Policies,
pursuant to Sections 524(g), 541(c)(1) and 1123(a)(5)(B) of the Bankruptcy Code", and (ii) "[t]he
Bankruptcy Court hereby concludes that Sections 524(g), 541(c)(1) and 1123(a)(5)(B) of the Bankruptcy
Code preempt any anti-assignment provisions under the Asbestos Insurance Policies and applicable state
law."

state that (i) it is not approving the assignment of Insurance Rights set forth in the Plan or

determining the Preemption Issues; (ii) the Preemption Order will be entered separately; and,

[sic] (iii) the Preemption Order will be a final and appealable Order with respect to the

Preemption Issues."). Accordingly, based upon the provisions set forth in the Joint Motion and

the corresponding stipulations, and through their deeds and words, Certain Appellants preserved

their right to argue the merits of the Assignment and Preemption Issue on appeal, but they

waived, and are estopped from asserting, any challenge to the stipulated procedure by which that

issue was resolved in the Bankruptcy Court and reached this Court on appeal – *i.e.*, through a

contested matter bifurcated from the Plan Confirmation Order.

     Consistent with the Joint Motion and the related preemption stipulations, both the

Confirmation Order[10] and the Findings and Conclusions[11] contained explicit language reflecting

the bifurcation of the Plan confirmation process from a ruling on the Assignment and Preemption

Issue. Specifically, Section IV.F.2 of the Confirmation Order provided that "[t]he terms and

conditions of this Confirmation Order are separate and independent from, and are mutually

independent of, the terms and conditions of the Preemption Order." See also *Confirmation

Order*, § VII.A.4 ("[T]his Confirmation Order does not constitute or contain a ruling on the Plan

Assignment Objections or the Assignment and Preemption Issue.... Without limiting the

foregoing ..., the Bankruptcy Court hereby determines that ... this Confirmation Order is not

approving the assignment of Insurance Rights ... set forth in the Plan or determining the

Preemption Issues ... [, and] the Preemption Order has been, or will be, entered separately from

this Confirmation Order ..."). Similarly, Section II.K. of the Findings and Conclusions provided

---

[10]    Order Confirming Fourth Amended Joint Plan of Reorganization for Debtors and Debtors-in-Possession (as Modified) (the "Confirmation Order"). [D.I. 13674].
[11]    Findings of Fact and Conclusions of Law Regarding Confirmation of Fourth Amended Joint Amended Plan of Reorganization for Debtors and Debtors-in-Possession (as Modified) (the "Findings and Conclusions"). [D.I. 13672].

that "[t]hese Findings of Fact and Conclusions of Law are separate and independent from, and are mutually independent of, the terms and conditions of the Preemption Order." The Confirmation Order and the Findings and Conclusions were approved by the Bankruptcy Court on a wholly consensual basis on November 8, 2007 [D.I. 13674 and 13672, respectively]. This Court affirmed the Confirmation Order and adopted the Findings and Conclusions on November 13, 2007.

Agreeing with the process requested by the Plan Proponents and Certain Appellants, the Bankruptcy Court issued an order (the "Preemption Order") and a corresponding memorandum opinion on March 19, 2008 [D.I. 14237], which held that "the assignment of rights in certain insurance policies to the asbestos trust, as provided in part by Section 4.3 of the [Fourth Amended Plan], is valid and enforceable pursuant to §§ 524(g), 541(c)(1), 1123(a)(5)(B) and §1129(a)(1) of the Bankruptcy Code notwithstanding anti-assignment provisions in or incorporated in the policies and applicable state law." In re Federal-Mogul Global, Inc., 2008 Bankr. LEXIS 824 at *24. The present appeals followed.

## III.    Argument

### A.    The Court Below was Authorized to Issue the Premption Order, Which was Properly Before the Court as a Contested Matter.

As described above, Certain Appellants joined in requesting that the Bankruptcy Court consider the Assignment and Preemption Issue as a contested matter. This request was a pragmatic one. In light of the fact that the Assignment and Preemption Issue is solely a matter of applying the Bankruptcy Code with no facts in dispute, no practical purpose would have been served by initiating an adversary proceeding and Certain Appellants suffered no prejudice from having this dispute resolved as a contested matter. Certain Appellants now argue on appeal that the Preemption Order is in the nature of a declaratory judgment and, as such, the Assignment and

Preemption Issue could only have been properly brought as an adversary proceeding. Certain

Appellants further argue that even if an adversary proceeding had been brought seeking

declaratory relief, the Bankruptcy Court still would not been authorized to decide the

Assignment and Preemption Issue because it was not yet ripe. This Court should reject Certain

Appellants' argument on multiple grounds, not the least of which is that their argument is

contrary to their prior conduct and representations to the court below. Beyond that, Certain

Appellants' argument finds no support in the law or the well-settled axioms of jurisprudence.

Both law and equity compel the conclusion that the Bankruptcy Court was the appropriate forum

in which to resolve the Assignment and Preemption Issue.

**B.      Certain Appellants Waived the Right to an Adversary Proceeding and
         Suffered no Prejudice Below by Resolving the Assignment and Preemption
         Issue as a Contested Matter**

Certain Appellants have waived any right they may have had[12] to argue that this dispute

must be resolved by way of an adversary proceeding. Evcco Leasing Corp. v. Ace Trucking Co.,

828 F.2d 188, 195 (3d Cir. 1987) ("It is well settled that waiver may be established by conduct

inconsistent with claiming the waived right or any action or failure to act evincing an intent not

to claim the right."); In re Village Mobile Homes, Inc., 947 F.2d 1282, 1283 (5th Cir. 1991)

("Compliance with the requisites of an adversary proceeding may be excused by waiver of the

parties."); In re Norley, Case No. 01-37689 (DWG), 2002 Bankr. LEXIS 743, *16-17 (Bankr.

E.D. Pa. June 24, 2002) ("While the relief sought by the Movant requires the filing of a formal

adversary proceeding, the requirement can be waived by lack of objection and participation in

the contested matter procedure under Rule 9014." (quoting In re Graham, 1998 Bankr. LEXIS

961, at *5 n.4 (Bankr. E.D. Pa. Aug. 3, 1998)). Certain Appellants explicitly endorsed

proceeding by way of a contested matter by signing the Joint Motion wherein they represented to

---

[12]     *Post-Trial Brief*, Tab 9a(1), 1.

059066.1022

the Bankruptcy Court that "[t]his motion also constitutes a contested matter pursuant to Bankr.

R. 9014" and requested that the Assignment and Preemption Issue be "adjudicated and resolved

by way of separate contested matter." *Joint Motion*, ¶ 4, 8. Certain Appellants' representations

to the Bankruptcy Court constituted a waiver of their right to request to have the Preemption and

Assigment Issue heard as an adversary proceeding.

Moreover, even if the court below erred by allowing the Assignment and Preemption

Issue to proceed by motion rather than complaint, any such error is harmless.  In re Copper King

Inn, Inc., 918 F.2d 1404, 1407 (9th Cir. 1990) (where the parties had a full and fair opportunity

to participate in the proceedings, it was not a reversible error for the bankruptcy court to resolve

a dispute over the validity of a lien as a contested matter in the context of plan confirmation even

though Bankruptcy Rule 7001(6) requires an adversary proceeding for such relief).  Certain

Appellants have not alleged, let alone established, any unfair prejudice.  The parties agreed that

the Assignment and Preemption Issue was exclusively a legal dispute in respect to which no

discovery was required.  *Certain Insurers' Insurance Stipulation*, ¶¶ 2, 3(a)(i), and 5.  Certain

Appellants fully protected their interests throughout the proceedings, including by objecting and

participating in voluminous amounts of briefing and lengthy hearings.  They simply were not

prejudiced by litigating on a contested-matter basis.  See In re Copper King Inn, Inc., 918 F.2d at

1407 (declining to find reversible error when proceeding by motion where for "all practical

purposes an adversarial proceeding was held in this case"); Lernout & Hauspie Speech Prods. v.

Baker (In re Lernout & Hauspie Speech Prods.), 264 B.R. 336, 340 (Bankr. D. Del. 2001)

("Courts have routinely allowed matters to proceed that have been filed as contested matters

when they should have been filed as adversary complaints, where no prejudice has been

found."); In re Zolner, 249 B.R. 287, 292 (N.D. Ill. 2000) ("[U]nless the party is able to

demonstrate prejudice by the failure to file an adversary proceeding, a court will find the error

[in filing a motion instead of a complaint] constitutes harmless error."); <u>In re Vandy, Inc.</u>, 189

B.R. 342, 346 (Bankr. E.D. Pa. 1995) (finding that although an adversary proceeding should

have been brought to determine the validity of a lien, no unfair prejudice resulted from the

defective contested-matter procedure).

### C.    The Preemption Order was not a Declaratory Judgment

Another fundamental flaw in Certain Appellants' legal analysis is that it assumes that the

Bankruptcy Court's authority stems from the Declaratory Judgment Act. This simply is not so.

The Bankruptcy Court's authority to issue the Preemption Order derived from its statutory

jurisdiction over core proceedings and exclusive jurisdiction over property of the estate. 28

U.S.C. § 1334(e) and § 157(b)(1); <u>Tenn. Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 447

(2004) ("Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever

located, and over the estate."). It is well-settled law, and Certain Appellants do not contest, that

insurance rights like the rights at issue in the Preemption Order, constitute property of the estate.

<u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 190, 219 (3d Cir. 2004). As the Bankruptcy Code

empowers the Bankruptcy Court to transfer estate property through a plan of reorganization, the

Bankruptcy Court was authorized to issue the Preemption Order by virtue of its core jurisdiction

over plan confirmation and the administration of property of the estate. 28 U.S.C. §§ 157(b)(1)

and (2)(A), (L), and (M); <u>Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)</u>, 372

F.3d 154, 162-63 (3d Cir. 2004) ("We have held that a core proceeding under section 157 is one

that invokes a substantive right provided by title 11 or one that by its nature, could arise only in

the context of a bankruptcy case.") (internal citations omitted); <u>Estate of Lellock v. Prudential</u>

<u>Insurance Co. of Am.</u>, 811 F.2d 186, 189 (3d Cir. 1987) (holding that an insurance policy is

property of the estate within the meaning of section 541, even if the policy has not matured, has

14

no cash value, or is otherwise contingent); In re Combustion Eng'g, Inc., 391 F.3d at 219 n.27

(stating that the Bankruptcy Code expressly contemplates "the inclusion of debtor insurance

policies in the bankruptcy estate"); In re Kaiser Aluminum Corp., 343 B.R. 88, 94 (D. Del. 2006)

(holding that the bankruptcy court had "jurisdiction to adjudicate the assignment issues related to

the insurance policies as property of the estate under ... the Bankruptcy Code."). Because the

Preemption Order did not constitute a declaratory judgment, the balance of Certain Appellants'

argument regarding the necessity of an adversary proceeding and the question of ripeness falls by

the wayside.

　　　The fact that the Bankruptcy Court resolved the Assignment and Preemption Issue in the

Preemption Order rather than the Confirmation Order does not render the Preemption Order a

declaratory judgment.[13] The Fifth Circuit Court of Appeals rejected the same argument that

Certain Appellants press here, holding that a bankruptcy court's authority to issue a separate

order clarifying the scope of the relief provided pursuant to its own confirmation order was not

derived from the Declaratory Judgment Act. Applewood Chair Co. v. Three Rivers Planning &

Dev. Dist. (In re Applewood Chair Co.), 203 F.3d 914 (5th Cir. 2000). In Applewood, the debtor

sold certain equipment that had secured an obligation of the debtor to a creditor ("Three

Rivers"). Three Rivers brought a motion seeking clarification of the confirmation order to

determine its rights to proceed against the debtor's president, who had personally guaranteed the

loan. Id. at 918. In response to the debtor's argument that Three Rivers' motion could only be

---

[13]　　　Equally to the point, Certain Appellants are estopped from now arguing that the Bankruptcy
Court lacked the authority to issue the Preemption Order because its disposition of the Assignment and
Preemption Issue was not set forth in the Confirmation Order. Certain Appellants agreed that "[t]he
Stipulating Insurers shall not contend in any appeal of the Preemption Order that the fact that the
determinations set forth in the Preemption Order were set forth therein, rather than in the Confirmation
Order, constitutes a basis for or otherwise supports reversal of the Preemption Order." Certain Insurer
Preemption Stipulation, ¶ 4. In the face of this agreement, Certain Appellants should not now be heard to
argue that the Preemption Order must be resolved by way of declaratory judgment rather than as part and
parcel of the Bankruptcy Court's plan confirmation process.

DB02:6901152.8                                                                                           059066.1022

resolved through an adversary proceeding as Three Rivers was seeking declaratory relief, the

Fifth Circuit ruled that a motion seeking to "clarify the 'intent and effect'" of the bankruptcy

court's confirmation order was not in the nature of a declaratory judgment action and that the

motion was appropriately resolved by the bankruptcy court as a contested matter. Id.

     Certain Appellants' only case on this point does not support the proposition that the

Preemption Order constitutes a declaratory judgment. Certain Appellants rely entirely on In re

Amatex Corp., 107 B.R. 856 (E.D. Pa. 1989), for the proposition that the Preemption Order is in

the nature of a declaratory judgment. Amatex is readily distinguished from the instant case. In

Amatex, the debtor sought a full adjudication concerning its rights under certain insurance

policies, including whether the insurers had an obligation to indemnify the debtor for personal

injury and property damage claims, the nature of the insurers' duty to defend pre-petition

lawsuits and post-petition proofs of claim, the liability of the insurers for certain administrative

costs, and whether certain provisions in the insurance policies created unsecured claims against

the debtor's estate. Id. at 860. Here, the scope of the Preemption Order does not approach the

breadth of the relief at issue in Amatex. The Preemption Order resolves only the narrow issue of

whether the Trust can stand in the shoes of the Debtors in respect to certain asbestos insurance

rights assigned to the Trust pursuant to the Plan. All of Certain Appellants' coverage defenses

are unaffected by the Preemption Order and are fully preserved. In re Federal-Mogul Global,

Inc., 2008 Bankr. LEXIS 824 at *21 ("Coverage issues, including, *inter alia,* proof that an event

giving rise to liability occurred within the covered period before a specific policy can be

accessed for coverage, are all preserved."); *Plan,* § 10.4.

### D.    The Assignment and Preemption Issue was a Ripe Dispute

     Regardless of whether the Preemption Order was a declaratory judgment or not, the

Bankruptcy Court clearly resolved a "ripe" dispute regarding the efficacy of Section 4.3 of the

                                 

Plan. See Public Serv. Co. v. New Hampshire (In re Public Serv. Co.), 99 B.R. 506, 509 (Bankr.
D.N.H. 1989) (holding that a declaratory judgment action to determine preemptive effect of
proposed plan was ripe for adjudication even though the actual terms and scope of the dispute
between the parties was subject to further proceedings). In the context of declaratory judgments,
ripeness is often determined by considering: "[(i)] the 'adversity of the interest' between the
parties to the action, [(ii)] the 'conclusiveness' of the declaratory judgment, and [(iii)] 'the
practical help, or utility' of the declaratory judgment." Travelers Ins. Co. v. Obusek, 72 F.3d
1148, 1154 (3d Cir. 1995); NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333,
342 (3d Cir. 2001) (same) (citing Step-Saver Data Sys., Inc., Wyse Tech., 912 F.3d 643, 647 (3d
Circ. 1990)). A brief review of each of these three factors makes clear that the Assignment and
Preemption Issue was ripe for adjudication by the Bankruptcy Court.

     An "adversity of interest" certainly exists here. The interests of the Plan Proponents and
Certain Appellants are fully adverse in respect of the Assignment and Preemption Issue.
Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004) (finding adversity of interest
where "the parties are in a sufficiently adversarial posture to be able to present their positions
vigorously" such as by taking opposing position regarding whether the action in question was
authorized by statute). The Plan Proponents (and the beneficiaries of the Trust) on the one hand
have an interest in ensuring that the Trust, along with its assumption of the Debtors' liability for
asbestos personal injury claims, receives the full economic benefit of the insurance available to
the Debtors to pay such claims. Certain Appellants, on the other hand, have doggedly pursued
their interest in using the Debtors' bankruptcy proceedings to attempt to limit the Trust's access
to proceeds from policies that insure the Debtors.

As no facts were in dispute, the "conclusiveness" prong of the ripeness analysis also is satisfied here. See NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 344 (3d Cir. 2001) (holding that "conclusiveness" is satisfied where "the question presented is predominately legal" and no "further factual development would facilitate decision"); Surrick v. Killion, 449 F.3d 520, 528 (3d Cir. 2006) (holding that "cases presenting predominantly legal questions are particularly amenable to a conclusive determination" and that "federal preemption [is] predominantly legal for purposes of the conclusiveness prong"). Here, the Assignment and Preemption Issue is a pure question of law. *Certain Insurers' Insurance Stipulation*, ¶ 3.a.

The Bankruptcy Court also served the interest of practical utility when it resolved the Assignment and Preemption Issue. A declaratory judgment has "practical utility" where one of the parties will suffer hardship if judgment was withheld. NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 344-345 (3d Cir. 2001) ("[P]ractical utility goes to whether the parties' plans of actions are likely to be affected by a declaratory judgment and considers the hardship to the parties of withholding judgment.") (citations omitted). Without the ability to obtain a ruling on the Assignment and Preemption Issue from the Bankruptcy Court, the Plan Proponents or the Trust would be forced to press the issue in multiple coverage disputes in state courts ill-suited to address questions of federal policy. Phoenix Elec. Contracting v. Lovece, Case No 93-4340, 1993 U.S. Dist. LEXIS 17376, *11 (S.D.N.Y. Dec. 7, 1993) ("From the viewpoint of judicial economy, the preemption question -- implicating federal policy -- is best addressed in federal court.").

Certain Appellants' own argument illustrates why the Assignment and Preemption Issue was appropriately resolved by the Bankruptcy Court. According to Certain Appellants, the Assignment and Preemption Issue can only be resolved in the future when the parties seek to

18

adjudicate the ultimate issue of insurer liability to the Trust in coverage litigation that is likely to occur in multiple jurisdictions throughout the country. Taken to its logical conclusion, Certain Appellants' argument would lead to three results that are fully at odds with well-established jurisprudence. First, it would deprive a federal court the opportunity to hear a matter involving preemption, which is clearly a matter of federal policy best decided by a federal court. Phoenix Elec. Contracting v. Lovece, 1993 U.S. Dist. LEXIS 17376 at *11 ("From the viewpoint of judicial economy, the preemption question -- implicating federal policy -- is best addressed in federal court."). Second, it would potentially subject Section 4.3 of the Plan to multiple, possibly conflicting interpretations regarding the transfer of estate property over which the Bankruptcy Court has exclusive jurisdiction, and thus undermine the purpose of centralized bankruptcy proceedings. Fidelity Nat'l Title Ins. Co. v. Bozzuto, 227 B.R. 466, 470 (E.D. Va. 1998) (stating that the primary purpose of the automatic stay and the bankruptcy estate is to "insure that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another") (citation omitted). Third, it would waste valuable judicial resources by having several other courts address the Assignment and Preemption Issue even though it was already properly before a single court of competent jurisdiction. Krasny v. Bagga (In re Jamuna Real Estate, LLC), 365 B.R. 540, 564 (Bankr. E.D. Pa. 2007) ("Because multiple district courts adjudicating the same controversy between the same parties would waste scarce judicial resources, the first court properly cognizant of the controversy should decide the issues before it.").

     **E.**     **It was Appropriate for the Bankruptcy Court to Decide the Assignment and Preemption Issue in the Context of a Contested Matter**

     Even if this Court were to find that the Preemption Order is, in effect, a declaratory judgment, that does not compel the conclusion that the Preemption Order could only issue from

       

an adversary proceeding.  An adversary proceeding is required for declaratory relief only when

the declaratory judgment being sought relates to the types of proceedings listed in Bankruptcy

Rule 7001.  See Fed. R. Bankr. P. 7001(9); see also Halbert v. Yousif (In re Yousif), 201 F.3d

774, 781 n.2 (6th Cir. 2000) ("Bankruptcy Rule 7001 sets forth those proceedings that qualify as

adversary proceedings.").  Any dispute that is not specifically listed in Bankruptcy Rule 7001

may proceed as a contested matter.  Midkiff v. Stewart (In re Midkiff), 342 F.3d 1194, 1200

(10th Cir. 2003) (stating that proceedings not expressly listed in Bankruptcy Rule 7001 can

proceed by contested motion); In re Envirodyne Indus., 174 B.R. 955, 960 (Bankr. N.D. Ill.

1994) ("Any matter that is disputed and not specifically listed under one of the types of

adversary proceedings under Fed. R. Bankr. P. 7001 falls under the catch-all term 'contested

matter.'").  Thus, declaratory relief that does not relate to any of the types of proceedings listed

in Bankruptcy Rule 7001 may be obtained in the context of a contested matter.  See Envirodyne,

174 B.R. at 960 ("Even if the [relief at issue] were considered a declaratory judgment, this does

not mean that an adversary proceeding would have been required, as Fed. R. Bankr. P. 7001 does

not define all proceedings seeking declaratory judgments as being adversary proceedings.").  A

proceeding to transfer property of the estate or to preempt otherwise applicable non-bankruptcy

law is not among the types of proceedings listed in Bankruptcy Rule 7001.

        Indeed, neither of the two cases cited by Certain Appellants supports the proposition that

the Assignment and Preemption Issue, even if it implicated declaratory relief, need be resolved

exclusively through an adversary proceeding.  The Third Circuit has explicitly rejected the

rationale underlying the analysis of the court in Amatex.  The Amatex court determined that a

declaratory judgment constituted "equitable relief" under Bankruptcy Rule 7001(7).  In re

Amatex, 107 B.R. at 862.  The Third Circuit has subsequently held that Bankruptcy Rule

7001(7) should not be used as a "catch all" for any type of bankruptcy proceeding that can arguably constitute equitable relief. Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 123 (3d Cir. 1999) ("While many court orders in bankruptcy proceedings could arguably be considered as providing equitable relief, we do not believe that this means that every filing seeks 'equitable relief' as referenced in Rule 7001(7)...."). Certain Appellants' reliance on In re Hanson, 397 F.3d 482, 484 (7th Cir. 2005), is similarly misplaced. In Hanson, an adversary proceeding was required because the debtor was seeking to determine the dischargeability of a debt—a type of proceeding specifically listed in Bankruptcy Rule 7001. See Fed. R. Bankr. P. 7001(6). The Assignment and Preemption Issue does not implicate any of the types of relief listed in Bankruptcy Rule 7001.[14] Fed. R. Bankr. P. 7001. More importantly, however, the court in Hanson found that the creditor there had been deprived of due process in that it never had the opportunity to object to the plan or to otherwise protect its rights. 397 F.3d at 487 ("Hanson's failure to serve ECMC with a summons and an adversary proceeding complaint effectively denied ECMC the opportunity of presenting an objection prior to the adjudication of its rights."). Here, Certain Appellants have fully litigated the Assignment and Preemption Issue.

---

[14]    Without supporting analysis or authority, Certain Appellants cite Bankruptcy Rule 7001(1) as applicable to the Assignment and Preemption Issue. However, Bankruptcy Rule 7001(1) does not apply to the present dispute as it is not an proceeding "to recover money or property...." Fed. R. Bankr. P. 7001(1).

IV.    **Conclusion**

For the foregoing reasons and the reasons set forth in the briefs of the ACC and

Reorganized Debtors, the FCR respectfully requests that the Court affirm the Bankruptcy Court's

decision, dismiss the Certain Appellants' and LMI's appeals with prejudice, and grant such other

and further relief as required in the interests of justice.


Dated:    June 18, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (DE Bar No. 2202)
Edwin J. Harron (DE Bar No. 3396)
Travis N. Turner (DE Bar No. 4926)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600
Facsimile:  (302) 576-3298
E-mail:  jpatton@ycst.com
E-mail:  eharron@ycst.com
E-mail:  tturner@ycst.com

*Counsel to Eric D. Green,*
*Legal Representative for Future Asbestos Claimants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FEDERAL-MOGUL GLOBAL INC., T&N LIMITED, *et al.*, | Case No. 01-10578 (JKF) |
| Reorganized Debtors. | |
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, *et al.*, | Civil Action Nos. 08-0229 and 08-02330 |
| Appellants, | Judge Joseph H. Rodriguez |
| v. | |
| FEDERAL-MOGUL GLOBAL INC., *et al.*, | |
| Appellees. | |

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2008, I caused a true and correct copy of the

**BRIEF OF THE LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS CLAIMANTS**

to be filed with the Clerk of the Court using CM/ECF, which will send notification that such

filing is available for viewing and downloading to the following counsel of record:

Sean J. Bellew (sbellew@cozen.com)
Kathleen Campbell Davis (kcampbell@camlev.com)
John D. Demmy (jdd@stevenslee.com)
Edwin J. Harron (eharron@ycst.com, bank@ycst.com)
Bruce E. Jameson (bejameson@prickett.com, ljschulte@prickett.com)
Laura Davis Jones (ljones@pszyjw.com)
James S. Yoder (yoderj@whiteandwilliams.com)
Michael William Yurkewicz (myurkewicz@klehr.com)

059066.1001

I further certify that on June 18, 2008, I caused a true and correct copy of the

**BRIEF OF THE LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS CLAIMANTS**

to be served as indicated upon the following parties:

Sean J. Bellew, Esq.
Cozen O'Connor
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE 19801
sbellew@cozen.com
(AIG Casualty Co., AIU Ins. Co., American Home
Assurance Co., Granite State Ins. Co., Insurance
Company of the State of Pennsylvania, Lexington
Ins. Co., National Union Fire Ins. Co. of Pittsburgh,
PA, and New Hampshire Ins. Co.)
*Hand Delivery and Email*

William J. Bowman, Esq.
James P. Ruggeri, Esq.
Edward B. Parks, II, Esq.
Hogan & Hartson L.L.P.
555 Thirteenth Street, NW
Washington, DC 20004
wjbowman@hhlaw.com
jpruggeri@hhlaw.com
ebparks@hhlaw.com
(Hartford Accident and Indemnity Co., First State
Ins. Co., and New England Ins. Co.)
*First Class Mail and Email*

David C. Christian, II, Esq.
William J. Factor, Esq.
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
dchristian@seyfarth.com
wfactor@seyfarth.com
(Columbia Casulty Co., Continental Casualty Co.,
and The Continental Ins. Co.)
*First Class Mail and Email*

James F. Conlan, Esq.
Larry J. Nyhan, Esq.
Jeffrey C. Steen, Esq.
Kevin T. Lantry, Esq.
Kenneth P. Kansa, Esq.
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
jconlan@sidley.com
lnyhan@sidley.com
jsteen@sidley.com
klantry@sidley.com
kkansa@sidley.com
(Reorganized Debtors)
*First Class Mail and Email*

Steven M. Crane, Esq.
Berkes Crane Robinson & Seal LLP
515 South Figueroa Street, Suite 1500
Los Angeles, CA 90071
scrane@bcrslaw.com
(Columbia Casulty Co., Continental Casualty Co.,
and The Continental Ins. Co.)
*First Class Mail and Email*

Michael S. Davis, Esq.
Jantra Van Roy, Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022
mdavis@zeklaw.com
jvanroy@zeklaw.com
(AIG Casualty Co., AIU Ins. Co., American Home
Assurance Co., Granite State Ins. Co., Insurance
Company of the State of Pennsylvania, Lexington
Ins. Co., National Union Fire Ins. Co. of Pittsburgh,
PA, and New Hampshire Ins. Co.)
*First Class Mail and Email*

John D. Demmy, Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
jdd@stevenslee.com
(Fireman's Fund Ins. Co. and National Surety Co.)
*Hand Delivery and Email*

Marla R. Eskin, Esq.
Kathleen Campbell Davis, Esq.
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
meskin@camlev.com
kdavis@camlev.com
(Official Committee of Asbestos Claimants)
*Hand Delivery and Email*

Elit R. Felix, II, Esq.
Margolis Edelstein
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PA 19106-3304
efelix@margolisedelstein.com
(Allianz Global Corporate & Specialty AG, Allianz
Global Risks U.S. Ins. Co., and Allianz Underwriters
Ins. Co.)
*First Class Mail and Email*

Leonard P. Goldberger, Esq.
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103
lpg@stevenslee.com
(Fireman's Fund Ins. Co. and National Surety Co.)
*First Class Mail and Email*

Craig Goldblatt, Esq.
Danielle Spinelli, Esq.
Nancy L. Manzer, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
craig.goldblatt@wilmerhale.com
danielle.spinelli@wilmerhale.com
nancy.manzer@wilmerhale.com
(Hartford Accident and Indemnity Co., First State
Ins. Co., and New England Ins. Co.)
*First Class Mail and Email*

Elihu Inselbuch, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152
ei@capdale.com
(Official Committee of Asbestos Claimants)
*First Class Mail and Email*

Bruce E. Jameson, Esq.
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328
bejameson@prickett.com
(Columbia Casulty Co., Continental Casualty Co.,
and The Continental Ins. Co.)
*Hand Delivery and Email*

Laura Davis Jones, Esq.
James E. O'Neill, Esq.
Scotta E. McFarland, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
ljones@pszyjw.com
joneill@pszyjw.com
smcfarland@pszyjw.com
(Reorganized Debtors)
*Hand Delivery and Email*

Peter Van N. Lockwood, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, NW
Washington, DC 20005
pvnl@capdale.com
(Official Committee of Asbestos Claimants)
*First Class Mail and Email*

Eileen T. McCabe, Esq.
Mendes & Mount LLP
750 Seventh Avenue
New York, NY 10019-6829
eileen.mccabe@mendes.com
(Certain Underwriters at Lloyd's, London and
Certain London Market Companies)
*First Class Mail and Email*

Richard W. Riley, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
rwriley@duanemorris.com
(Certain Underwriters at Lloyd's, London and
Certain London Market Companies)
*Hand Delivery and Email*

Russell W. Roten, Esq.
Jeff D. Kahane, Esq.
Katherine Nichols, Esq.
Duane Morris LLP
633 West Fifth Street, Suite 4600
Los Angeles, CA 90071
rwroten@duanemorris.com
jkahane@duanemorris.com
knichols@duanemorris.com
(Certain Underwriters at Lloyd's, London and
Certain London Market Companies)
*First Class Mail and Email*

Michael A. Shiner, Esq.
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburg, PA 15222
mshiner@tuckerlaw.com
(Certain Underwriters at Lloyd's, London and
Certain London Market Companies)
*First Class Mail and Email*

James S. Yoder, Esq.
White and Williams LLP
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
yoderj@whiteandwilliams.com
(Allianz Global Corporate & Specialty AG, Allianz
Global Risks U.S. Ins. Co., and Allianz Underwriters
Ins. Co.)
*Hand Delivery and Email*

Michael W. Yurkewicz, Esq.
Klehr, Harrison, Harvey, Branzburg and Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801
myurkewicz@klehr.com
(Hartford Accident and Indemnity Co., First State Ins.
Co., and New England Ins. Co.)
*Hand Delivery and Email*

Edwin J. Harron (No. 3396)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: eharron@ycst.com

Counsel to Eric D. Green, the Legal Representative for
Future Asbestos Claimants