FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FEDERAL-MOGUL GLOBAL., *et al.*, | ) Bankruptcy Case No. 01-10578 |
| | ) |
| | ) |
| CERTAIN UNDERWRITERS AT LLOYDS'S LONDON, et al., | ) Civil Action Nos. 08-0229 and 08-230 |
| | ) |
| | ) Judge Joseph H. Rodriguez |
| Appellants, | ) |
| v. | ) |
| | ) **OPINION** |
| FEDERAL-MOGUL GLOBAL INC., *et al.*, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Appearances:

*Attorneys for Appellee Debtor:*

Laura Davis Jones, Esq.
James O'Neill, Esq.
Pachulski, Stang, Ziehl & Jones, LLP
919 N. Market St., Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

Jeffrey Steen, Esq.
Sidley Austin, LLP
One South Dearborn
Chicago, IL 60603

*Attorneys for Appellee Asbestos Claimants Committee:*

Kathleen Campbell Davis, Esq.
Campbell & Levine
800 N. King St., Suite 300
Wilmington, DE 19801

Peter Van N. Lockwood, Esq.
Caplin & Drysdale
One Thomas Circle, N.W.
Washington, D.C. 20005-5802

*Attorney for Appellee Future Claimants Representative:*

Edwin J. Harron, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

*Attorney for Appellants, Certain Underwriters at Lloyd's London and Certain London Market Companies:*

Richard W. Riley, Esq.
Duane Morris, LLP
1100 N. Market St., Suite 1200
Wilmington, DE 19801

Russel Roten, Esq.
Duane Morris, LLP
633 W. 5th St., Suite 4600
Los Angeles, CA 90071

*Attorneys for Certain Appellants:*

Michael W. Yurkewicz, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
919 Market St., Suite 1000
Wilmington, DE 19801

John D. Demmy, Esq.
Stevens & Lee
1105 N. Market St., 7th Floor
Wilmington, DE 19801

Craig Goldblatt, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006

James S. Yoder, Esq.
White and Williams, LLP
824 N. Market St., Suite 902
P.O. Box 709
Wilmington, DE 19899-0709

Sean J. Bellew, Esq.
Ballard, Spahr, Andrews & Ingersoll, LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801-3034

Michael S. Davis, Esq.
Zeichner Ellman & Krause, LLP
575 Lexington Ave.
New York, NY 10022

David C. Christian III, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn St., Suite 2400
Chicago, IL 60603

**RODRIGUEZ**, Senior District Judge:[*]

This matter comprises two consolidated matters, 08-0229 and 08-0230, arising from an appeal of the Preemption Order and Memorandum Opinion issued by the United States Bankruptcy Court for the District of Delaware in Case No. 01-10578.[1] In the case below, the Bankruptcy Court held that the assignment of rights in certain

---

[*]     Senior Judge of the United States District Court for the District of New Jersey, sitting by designation.

[1]     See generally, In re Federal-Mogul Global, Inc., 385 B.R. 560 (Bankr. D.Del. 2008).

insurance policies to an asbestos trust, as provided by the Reorganization Plan ("the Plan"), is valid under § 524(g), § 541(c)(1), § 1123(a)(5)(B), and § 1129(a)(1) of the United States Bankruptcy Code. In re Federal-Mogul Global Inc., 385 B.R. 560, 576 (Bankr. D.Del. 2008). The Court based this conclusion on its holding that § 1123(a)(5)(B) preempts anti-assignment provisions in relevant insurance policies under applicable state law. Id. Appellants directly challenge that holding. As a result, the issue remains whether, under the Bankruptcy Code as a matter of law, the assignment of Asbestos Insurance Policies to a § 524(g) trust is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law.[2]

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), as this matter is on appeal from the U.S. Bankruptcy Court for the District of Delaware.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Appellees Federal-Mogul Global Corporation and various of its subsidiaries ("Appellees" or "FMC") filed for bankruptcy in October 2001 due to overwhelming debts accrued from asbestos-related litigation. (Appellee Br. 2.) Pursuant to 11 U.S.C. § 524(g), FMC proposed a reorganization plan to resolve all current and future liability claims. (Id.) Under the proposal, a § 524(g) trust was created "to which all of [FMC's] asbestos personal injury liabilities ... would be transferred for resolution and payment..."

---

[2]     Certain Appellants also advanced a threshold issue of justiciability, but that issue was withdrawn by stipulation during oral argument. (See Hr'g Tr. 77:1-17, Nov. 12, 2008.)

(Id.) Funding for the trust included 50.1 percent of FMC stock and the rights to all remaining FMC insurance coverage for the transferred asbestos liabilities. (Id. at 2-3.) Known as the "Central Deal", this proposal went through several amendments before finally being confirmed in 2007 by the U.S. Bankruptcy Court for the District of Delaware. (See Order Confirming Fourth Am. Joint Plan of Reorganization, filed Nov. 8, 2007.) This District Court affirmed that Confirmation Order on November 13, 2007. (Dock. No. 13698.) Shortly thereafter, the Plan became effective and was substantially consummated on December 27, 2008. (Dock. No. 13940.)

Appellants Certain Underwriters at Lloyd's, London, London Market Insurers, Certain London Market Companies ("LMI") and Certain Appellants have maintained throughout the confirmation process that the Plan violates their contractual rights under the applicable insurance policies.[3] (See, e.g., LMI Br. 15; see also Certain Appellants' Br. 5.) Specifically, they claimed that the anti-assignment provisions contained in the insurance policies prevented the assignment of insurance rights into the § 524(g) trust. (Id.) In order to proceed with the confirmation process, however, both parties agreed that the dispute over the anti-assignment provisions would be resolved as a separate matter following confirmation of the Plan. (See Joint Mot.

---

[3]     LMI goes further, contending that the confirmed plan violates § 524(g) because it fails to "provide for the Trust to retain a majority of the shares of any Debtor, let alone all of the Debtors whose liability the Trust assumes." (LMI Br. 14.) Even though this issue was fully settled by the Confirmation Order of the Bankruptcy Court, and later affirmed by this District Court, LMI continues to raise the issue in its written submissions and oral argument. "We would like to start out with one point, Your Honor ... We make the point that the 524(g) injunction rules were not followed in this case." (Hr'g Tr. 16-20.) The Court notes that a final, non-appealable bankruptcy confirmation order cannot be collaterally attacked in a separate proceeding. See, e.g., In re Continental Airlines, Inc., 279 F.3d 226, 233 (3d Cir. 2002). As a result, the Court need not address this issue further.

Seeking Determination of Asbestos Insurance Assignment and Preemption Issue Pursuant to Plan, <u>filed</u> Oct. 17, 2007) ("Joint Motion"). Appellants also stipulated that they would not object to the "entry by the Bankruptcy Court of the Preemption Order", reserving only their right to appeal. (<u>See</u> Objection Stipulation, ¶ 1, <u>filed</u> July 24, 2007) ("Stipulation").

In accordance with the Joint Motion and Stipulation, the Bankruptcy Court issued its Preemption Order and Memorandum Opinion on March 19, 2008–four months after the plan was confirmed. <u>See</u> <u>Federal-Mogul</u>, <u>supra</u>. The Court held that the Plan "is valid and enforceable pursuant to 11 U.S.C. §§ 524(g),[4] 541(c)(1),[5] 1123(a)(5)(B)[6] and § 1129(a)(1)[7] of the Bankruptcy Code notwithstanding anti-

---

[4]   11 U.S.C. § 524 (g) provides in relevant part:

(1)(A) After notice and a hearing, a court that enters an order confirming a plan of reorganization under Chapter 11 may issue, in connection with such an order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section ... (2)(B)(i) the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization– (I) is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products...

<u>Id.</u>

[5]   11 U.S.C. § 541(c)(1) provides in relevant part:

Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this subsection notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law...

<u>Id.</u>

[6]   11 U.S.C. § 1123(a)(5)(B) provides in relevant part:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall– provide

assignment provisions in or incorporated in the policies and applicable state law."
Id. at 576. That decision was appealed by LMI,[8] case no. 08-0229, and Certain Other
Insurers (Certain Appellants),[9] case no. 08-0230. The cases have been consolidated on
appeal, (see Stipulation and Order Regarding Consolidation of Appeals, Waiver of
Mediation, and Briefing Schedule filed May 6, 2008), which brings the Court to the
present dispute.

LMI and Certain Appellants advance several contentions in support of their main
claim that § 1123(a)(5)(B) does not preempt anti-assignment provisions in private
contractual agreements or applicable state law.  First, Certain Appellants emphasize the
presumption against preemption, and contend that the presumption "is heightened in

---

adequate means for the plan's implementation, such as– transfer of all or any part
of the property of the estate to one or more entities, whether organized before or
after the confirmation of such plan...

Id.

[7]     11 U.S.C. § 1129(a)(1) provides in relevant part:

The court shall confirm a plan only if ... the plan complies with the applicable provisions
of this title...

Id.

[8]     Additional Appellants in case no. 08-0229 include: Certain London Market
Companies, Hartford Accident and Indemnity Company, First State Insurance Company, and
New England Insurance Company.

[9]     "[C]ertain other insurers" include: Hartford Accident and Indemnity Company,
First State Insurance Company, New England Insurance Company, AIG Casualty Company, AIU
Insurance Company, American Home Assurance Company, Granite State Insurance Company,
Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Fire
Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, Allianz Global
Corporate & Specialty AG, Allianz Global Risks US Insurance Company, Allianz Underwriters
Insurance Company, Columbia Casualty Company, Continental Casualty Company, Continental
Insurance Company, Fireman's Fund Insurance Company, and National Surety Company.

the insurance context". (Certain Appellants Br. 17.)  Second, Certain Appellants contend

that § 1123(a)(5) does not preempt private *contracts*, which are separate and distinct

from *law*.  (Certain Appellants Br. 19-20.)  Third, LMI and Certain Appellants contend

that any preemption discerned from § 1123(a) only applies to laws relating to financial

condition.  On this point, LMI and Certain Appellants rely heavily on the Ninth Circuit's

opinion in Pacific Gas & Elec. Co. v. Cal. Ex rel. Cal. Dept. of Toxic Substances Control,

350 F.3d 932, 949 (9th Cir. 2003) (holding that § 1123(a)(5) only preempts otherwise

applicable nonbankruptcy law relating to financial condition).  Fourth, LMI contends

that there is a distinction between proceeds and rights; while § 1123(a)(5)(B) permits the

vesting of insurance *proceeds*, that section does not go so far as to permit the vesting of

insurance *rights*.  (See, e.g., LMI Br. 18-19; See also Hr'g Tr. 12:23-25, 13:1) ("[W]e're

not talking about proceeds, but ... insurance rights, which is the right to sue for

coverage, and that is an entirely different ball of wax than proceeds.") With respect to

this point, LMI contends that the Bankruptcy Court misconstrued Third Circuit

precedent on the preemption issue.  See Federal-Mogul, 385 B.R. at 567 (citing In re

Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004)).  LMI also contends that § 363(l)

and § 365 are the proper sections to apply to anti-assignment clauses in this context, not

§ 1123(a)(5)(B).  In light of the foregoing, LMI and Certain Appellants contend that the

Bankruptcy Court below should be reversed.

Appellees[10] answer that the Bankruptcy Court correctly held that the anti-

assignment provisions were preempted by § 1123(a)(5)(B), along with applicable

---

[10]     In addition to FMC, Appellees generally include Future Claimants Representative and Asbestos Claimants Committee.

sections of the Bankruptcy Code.  In doing so, they contend that any presumption

against preemption is rebutted by a plain reading the statute, which in their view,

expresses a clear desire of Congress to preempt.  Refuting LMI and Certain Appellants'

charge of faulty analysis, Appellees contend that the Bankruptcy Court correctly

followed controlling Third Circuit precedent.  See In re Combustion Eng'g, supra.

Furthermore, Appellees contend that Certain Appellants' construction of § 1123(a)(5) is

overly narrow and restrictive; a proper reading, they contend, reveals that the section

does preempt the anti-assignment provisions in the insurance policies at issue.

Consequently, Appellees contend that its preemptive scope is not limited to laws relating

to financial condition.  Finally, Appellees reject LMI's distinction between proceeds and

rights, as well as Certain Appellant's distinction between private contracts and law.

These contentions are discussed below.

### III. STANDARD OF REVIEW

A District Court sitting in an appellate posture reviews a Bankruptcy Court's legal

determinations de novo.  See In re Old Summit Mfg., LLC, 523 F.3d 134, 137 (3d Cir.

2008).  Factual determinations are reviewed for clear error.  In re Old Summit Mfg.,

LLC, 523 F.3d at 137; accord Fed. R. Bankr. P. 8013.

### IV. DISCUSSION

#### A. Anti-Assignment Clauses and Preemption Doctrine

Preemption doctrine is rooted in the Supremacy Clause.  See U.S. Const., art. VI,

cl. 2 ("This Constitution, and the laws of the United States which shall be made in

pursuance thereof...shall be the supreme law of the land.").  Under the doctrine, a state

law yields to a federal law in any case where the state law either contravenes or

interferes with the stated purpose of the federal law.  See Hillsborough County, Fla. v.

Automated Med. Labs., Inc., 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985)

(citing Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 211, 6 L.Ed. 23 (1824)).  Thus, "the

purpose of Congress is the ultimate touchstone" in preemption analysis.  See Retail

Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct.

219, 11 L.Ed. 179 (1963).  That purpose or intent is "primarily discerned from the

language of the statute, and the statutory framework surrounding it."  Medtronic, Inc.,

v. Lohr, 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting Gade v.

Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)

(Kennedy, J., concurring in part and concurring in judgment)).  Notably, preemption

applies in three distinct cases: 1) when Congress explicitly states its intention to preempt

state law (express preemption); 2) when federal and state law cannot be harmoniously

read together because they are in direct conflict (conflict preemption); and (3) when

Congress legislates in a comprehensive manner so as to solely occupy a particular area of

the law (field preemption).  Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 298 (3d Cir.

2008) (citations omitted).

### B. Analysis

### i. Express Preemption

The relevant section of the Bankruptcy Code in this case is § 1123(a)(5)(B).  That

section states, "*Notwithstanding any otherwise applicable nonbankruptcy law*, a plan

shall provide adequate means for the plan's implementation, such as–transfer of all or

any part of the property of the estate to one or more entities, whether organized before

or after the confirmation of such plan".  See 11 U.S.C. § 1123(a)(5)(B) (emphasis added).

The Bankruptcy Court below held that § 1123(a)(5)(B) preempts the anti-assignment provisions in the insurance policies and otherwise applicable state law. See Federal-Mogul, 385 B.R. at 567. Consistent with the de novo standard of review and the analytical framework discussed above, this Court shall conduct its own examination of § 1123(a)(5)(5) to determine its preemptive powers, if any.

Section 1123(a) was first enacted in its modern form in 1978. See An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub.L. No. 95-598, § 1123(a)(5), 92 Stat. 2549, 2631-32 (1978). In that version, the notwithstanding clause is conspicuously absent. Id. (stating "A plan shall provide adequate means..."). The clause was added to the section by amendment in 1984. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 507, 98 Stat. 333, 385 (1984). At the time of passage, there was neither floor debate nor committee reports prepared discussing the proposed added language. Since that time, however, several cases have shed light on the meaning of a notwithstanding clause.

First, the Supreme Court held in Cisneros v. Alpine Ridge Group that the inclusion of a notwithstanding clause in a contract context "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions..." See 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) (employing well-established principles of statutory construction to construction of an assistance contract). The Third Circuit has held similarly, albeit in a relevant statutory context. See New Jersey Air Nat'l Gaurd v. Fed. Labor Relations Auth., 677 F.2d 276, 283 (3d Cir. 1982). In New Jersey Air Nat'l Gaurd, the Third Circuit dealt with construction of § 709(f) of the 1968 Technician Act. Id. That section of the Act stated, "Notwithstanding

-10-

any other provision of law and under regulations prescribed by the Secretary concerned..." See 32 U.S.C. § 709(f). The Court held that the clause *"Notwithstanding any other provision of law..."* effectively preempted conflicting provisions of law that existed at the time the Act was enacted. New Jersey Air Nat'l Gaurd, 677 F.2d at 283. (reasoning that "a clearer statement is difficult to imagine.") (emphasis added).

 With respect to the Bankruptcy Code, numerous sections are now prefaced with a notwithstanding clause,[11] and in each instance, the congressional intent has been interpreted as express preemption. See, e.g., Pacific Gas, 350 F.3d at 946 (9th Cir. 2003) (noting that the "notwithstanding formulation is commonly used in other parts of the Bankruptcy Code to indicate express preemption, and there is little reason to think that it is used in § 1123(a) to indicate anything else."). This interpretation is consistent with the maxim that the same language used in one part of a statute is presumed to have the same meaning when used in another part of the same statute. See, e.g, Mertens v. Hewitt Associates, 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); see also C.I.R. v. Ridgeway's Estate, 291 F.2d 257, 259 (3d Cir. 1961). Moreover, the Third Circuit has cited § 1123(a)(5) as an example of express preemption. See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc., 124 F.3d 487, 493 (3d Cir. 1997) (contrasting the lack of visible preemptive intent in § 363(b)(1) and § 704(1) with the explicitly clear preemptive intent of § 1123(a)(5) and § 541(c)(1)). Because congressional intent is "primarily discerned from the language of the statute," see Medtronic, Inc., 518 U.S. at 486, it is evident that § 1123(a)(5) *expressly* preempts "any otherwise applicable

---

[11] For a brief survey of these sections, see Pacific Gas, 350 F.3d at 946.

nonbankruptcy law."[12] 11 U.S.C. § 1123(a). The sole question, then, is whether anti-assignment provisions in the instant insurance policies are within the scope of its preemptive power.[13]

### ii. Scope of Express Preemption

Two principles inform the Court's judgment with respect to the preemptive scope inquiry. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). First, there is a longstanding presumption against the preemption of state police power regulations. Cipollone v. Ligget Group, Inc., 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Any preemption analysis must start with the "assumption that the historic police powers of the States [are] not to be superseded ... unless that was a clear and manifest purpose of Congress." See Altria Group, Inc., v. Good, 129 S.Ct. 538, 543, 77 U.S.L.W. 4021 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Nevertheless, preemption may still apply even if the law at issue is a "matter of special concern to the States". Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The Supreme Court recognizes that "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." Id. (quoting Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962)). Accordingly, the second

---

[12]    Because § 1123(a) expressly preempts any otherwise applicable nonbankruptcy law, this Court need not reach the issues of implied or field preemption.

[13]    Certain Appellants concede that preemption exists, albeit in a limited context. (Certain Appellants Reply Br. 11) ("[T]he question is whether, as Appellees contend, it preempts *all* nonbankruptcy law governing any transaction proposed to implement a plan.").

principle that informs the Court's judgment with respect to preemptive scope necessarily must be congressional purpose. Schermerhorn, 375 U.S. at 103. As stated above, congressional purpose or intent is best discerned from the language of the statute, and the statutory framework that surrounds it. Medtronic, Inc., 518 U.S. at 486. These principles provide the appropriate guideposts for the Court's preemptive scope analysis below.

As mentioned above, LMI and Certain Appellants contend that Sections 541(c) and 1123(a)(5)(B) do not permit the assignment of insurance rights to the § 524(g) trust. (See e.g., LMI Br. 15; see also Certain Appellants Br. 16.) They base this contention on the theory that the preemptive scope of § 1123(a)(5) does not encompass anti-assignment provisions contained in private contractual agreements, like the insurance policies here. (Id. at 37.) Construing § 1123(a)(5) as "a minor, administrative...section", LMI attempts to marginalize that provision of the Code entitled "Contents of plan". (Id. at 15.) They contend that the section "merely specifies the minimum requirements that a plan must satisfy...nothing more." (LMI Br. 15.) LMI further contends that "[i]t is not a section of substantive law." (Id. at 25.) According to LMI, it is § 363(l) and § 365 that applies to the assignment issue, not § 1123(a)(5)(B). (Id. at 21.) Because § 363(l) includes limited preemptive language, it follows, they contend, that it "does not preempt the Anti-Assignment Restrictions, and hence it would not permit the assignment." (Id. at 23.) Additionally, LMI contends that § 365 "does not permit modification of the policies" because they are "non-executory and non-assignable." (Id. at 38.)

Certain Appellants rely on the presumption against preemption to define a narrow preemptive scope. (Certain Appellants Br. 24.) They contend that the

-13-

presumption against preemption is "particularly strong in the context of insurance, where state regulatory authority is paramount." (Id.) Similarly, Certain Appellants contend that "courts presume that Congress does not intend to preempt private contracts and agreements." (Id. at 19.) According to its terms, they contend, § 1123(a) only applies "to *laws*, not contracts." (Id. at 20.) Next, Certain Appellants attempt to escape the plain meaning of § 1123(a), which provides for a seemingly broad preemptive scope, by contending that the plain meaning approach leads to bizarre results. (Id.; see also LMI Br. 33.) Along with LMI, they cite Ninth Circuit precedent and contend that § 1123(a) preempts only those laws relating to financial condition. (Certain Appellants Br. 21-25.)

Appellees reject the "administrative" characterization of § 1123 by LMI, and instead contend that the section "adds substantive scope to the power of the bankruptcy process." (Appellee Br. 21.) Appellees also reject LMI's theory that § 363(l) and § 365 are applicable to the present assignment issue. (Id. at 34) (describing § 363(l) as "an anti-forfeiture statute".) Appellees further contend that the presumption against preemption is overcome given that the statute expressly provides for preemption. (Appellee Br. 18.) Relying on the plain meaning of § 1123(a)(5)(B), Appellees contend that "it reflects a clear congressional intent to override nonbankruptcy restrictions regarding the transfer of property of the estate to another entity as necessary for implementation of a plan." (Id.) Appellees contend that, at minimum, § 1123(a)(5)(B) preempts provisions of private contracts. (Id. at 24.) They point to a string of bankruptcy and district court cases that have held to that effect, plus a significant case decided by the Third Circuit in 2004. See generally In re Combustion Engineering, Inc.,

-14-

391 F.3d 190 (3d Cir. 2004).  On the basis of plain meaning and applicable precedent

then, Appellees contend that the Ninth Circuit's decision in Pacific Gas is incorrect.

(Appellee Br. 29-30.)  Because this Court is bound by precedent of the Third Circuit

Court of Appeals, the Court begins its examination of the preemptive scope of §

1123(a)(5)(B) with a review of the relevant case law.

### a. Applicable Precedent

Integrated Solutions, Inc. provides a suitable foundation for the Court's

preemptive scope inquiry.  In that case, the Third Circuit recognized that § 1123(a)

expressly "displace[s] state nonbankruptcy law."  See Integrated Solutions, Inc., 124

F.3d at 493.  Notably, this recognition accords with Fourth Circuit precedent.  See In re

FCX, Inc., 853 F.2d 1149, 1155 (4th Cir. 1988).  The Fourth Circuit referred to §

1123(a)(5) in FCX not as a minor, administrative section, but rather as an "empowering"

section, meant to enhance "the ability of the trustee or debtor in possession to deal with

property of the estate."  Citing Collier on Bankruptcy, the Fourth Circuit went on to

characterize the terms of § 1123(a)(5) as "self-executing", allowing a plan under its

rubric to "propose such actions notwithstanding nonbankruptcy law or agreements."  Id.

(citing 5 Collier on Bankruptcy, ¶ 1123.01 at 1123-10).  LMI discounts this authority when

it characterizes § 1123(a)(5) as a "minor ... administrative section".  (LMI Br. 15.).

Of course, the proverbial elephant in the room is the more recent Third Circuit

case, In re Combustion Engineering.  See 391 F.3d 190, supra.  A significant dispute

arose once the Bankruptcy Court held that Combustion Eng'g was controlling on the

instant assignment issue.  See Federal-Mogul, 385 B.R. at 567 ("It is established in this

circuit that under § 1123(a)(5) assignment of policy proceeds to a § 524(g) trust is not

prohibited by anti-assignment provisions in insurance policies.").

LMI and Certain Appellants dispute the alleged binding aspect of <u>Combustion</u> <u>Eng'g</u>. LMI contends that <u>Combustion Eng'g</u> is distinguishable because it "dealt only with proceeds, and hence does not control the assignment of Insurance Rights." (LMI Reply Br. 4.) Certain Appellants contend that the case never addressed the preemptive scope of § 1123(a). (Certain Appellants Reply Br. 15.). Both LMI and Certain Appellants underscore the fact that <u>Combustion Eng'g</u> makes only "a passing reference in a footnote" to § 1123(a) (<u>see</u> Certain Appellants Br. 27.) As such, they contend that the alleged binding aspect of the case amounts to mere dicta.

Additionally, Certain Appellants note that the Ninth Circuit previously held in 2003–one year before <u>Combustion Eng'g</u>–that the preemptive effect of § 1123(a) is limited to "laws relating to financial condition." <u>See</u> <u>Pacific Gas</u>, 350 F.3d at 948. Contrasting the holding of <u>Pacific Gas</u> with the alleged holding of <u>Combustion Eng'g</u>, Certain Appellants conclude:

> It's to me, simply unfathomable to believe the Third Circuit would reach a decision directly contrary to a sister Court of Appeals on precisely that question without a word about the contrary authority. The Third Circuit is a responsible Court, and that just isn't they way that Court decides to break with another Court of Appeals on a substantial question of federal law. It's just implausible to believe that's going on there. Therefore, it doesn't make sense to say the issue has been decided in this jurisdiction by the Third Circuit.

(Hr'g Tr. 134:14-25, Nov. 12, 2008.)

In response, Appellees contend that "the Third Circuit specifically addressed the assignability of insurance rights as property of the estate to other entities[] ... [and] held that the debtor's insurance policies were property of the estate, despite the anti-

assignment provisions in the policies..." (Appellee Br. 11.)  Appellees then cite a litany of cases that have since relied on <u>Combustion Eng'g</u> as controlling precedent on this very issue. (<u>See, e.g.</u>, Appellee Br. 6 n. 5; <u>see</u> <u>also</u> Notice of Supp'l Auth. Supporting Br.'s of Appellees, Ex. A; <u>and</u> 2d Notice of Supp'l Auth. Supporting Br.'s of Appellees, Ex. A.) Lastly, Appellees reject LMI's attempt to distinguish <u>Combustion Eng'g</u> on the basis of proceeds versus rights. (Hr'g Tr. 105:7-25, 106, 107:1-10.)  Because of the significant dispute surrounding the applicability of <u>Combustion Eng'g</u> to the present issue, a thorough review is necessary.

In <u>Combustion Eng'g</u>, the Third Circuit dealt with a bankruptcy reorganization plan very similar to the one here.  That plan created a trust pursuant to 11 U.S.C. § 524(g), which channeled asbestos claims against the debtors into the trust.  <u>Combustion Eng'g</u>, 391 F.3d at 204.  The London Market Insurers objected to the plan—as they do here—on the grounds that it "impair[ed] their rights under the anti-assignment provisions of the relevant insurance policies."  <u>Id.</u> at 218.  Notably, the Third Circuit rejected the argument, and stated in relevant part:

> [W]e agree with the District Court that even if the subject insurance policies purported to prohibit assignment of Combustion Engineering's insurance proceeds, these provisions would not prevent the assignment of proceeds to the bankruptcy estate.

<u>Id.</u>  The Circuit Court based its conclusion on the relationship of § 541(c)(1) and § 1123(a)(5). <u>Id.</u> at 219 n. 27.  In footnote 27, the Court reasoned:

> Section 541 effectively preempts any contractual provision that purports to limit or restrict the rights of a debtor to transfer or assign its interests in bankruptcy. 11 U.S.C. 541 (c)(1) ("[A]n interest of the debtor in property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law-(A) that restricts or conditions transfer of such interest by the debtor").  The Bankruptcy Code expressly

contemplates the inclusion of debtor insurance policies in the bankruptcy estate. Section 1123(a)(5) provides:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall-

...

(5) provide adequate means for the plan's implementation, such as

...

(B) transfer of all or any part of property of the estate to one or more entities, whether organized before or after the confirmation of such plan.

Id. (citing 11 U.S.C. §§ 541(c)(1) and 1123(a)(5)); see also notes 5 - 6 of this Opinion. The Third Circuit finally explained that, "[p]ut simply, § 541 prohibits restrictions on the interests of the debtor, which includes the insurance policies held by Combustion Engineering." Id. at 219.

While LMI and Certain Appellants advance persuasive arguments to the contrary, this Court ultimately finds that Combustion Eng'g is controlling precedent on the present issue. Several factors compel this result. First and foremost, the language used by the Circuit Court is straightforward and unambiguous. As the Court opined, § 541(c)(1) prohibits restrictions on the interests of the debtor, including insurance policies held by the debtor, and § 1123(a)(5) "expressly contemplates" that such interests may be included in the bankruptcy estate. Section 1123(a)(5)(B) then allows for the "transfer of all or any part of the property of the estate to one or more entities", including a § 524(g) trust. 11 U.S.C. 1123(a)(5)(B). The succinctness of this analysis does not subtract from its cogency. In addition, the mere fact that the above passage appears in a section discussing standing does not somehow cloud the meaning of the message, as LMI contends. (See Hr'g Tr. 119:25, 120:1-7.) This same argument was

-18-

rejected by a Bankruptcy Court sitting in this District. See In re Kaiser Aluminum Corp., et al., 343 B.R. 88, 95 n. 4 (Bankr. D.Del. 2006) (noting that it is unpersuasive to contend that "the general context of the Third Circuit's discussion alters the force of its conclusions on the more narrow issue of preemption of the anti-assignment clauses by the Bankruptcy Court.").

Next, it is helpful to understand what the Third Circuit meant when it said, "we agree with the District Court..." See Combustion Eng'g, supra, at 218. The District Court in Combustion Eng'g addressed the very issue of assignability:

> Turning to the specific issues, the Court will first consider the appeals and objections of the insurers. As noted, the plan assigns the right to any insurance proceeds to the personal injury trust. The insurers contend that this violates anti-assignment provisions in their policies and impermissibly varies their rights under their insurance policies. The plan proponents contend that the assignment of proceeds does not equal assignment of a policy. The Court agrees. Assignment of a right to receive proceeds does not change any risk that was insured against.

(Appellees Br., Ex. 4 (citing In re Combustion Eng'g, Inc., District Court Confirmation Hr'g and Bench Opinion Tr. 145: 14-24, July 31, 2003).) On appeal to the Third Circuit, both parties briefed this issue. The appellants contended that "the district court erred as a matter of law in concluding that rights under the policies could be assigned without the Insurer's consent." (Appellee Br., Ex. 5 (citing Combustion Travelers Appellants' Br. 25).) The appellees responded that they could, and contended in relevant part:

> Even if Certain Insurers were correct that they must consent to the assignment of rights to proceeds, Section 1123(a)(5)(B) of the Bankruptcy Code specifically preempts non-bankruptcy law restrictions on the ability of the Debtor to implement a plan of reorganization, which, in this case, involves a transfer of rights from the Debtor's estate to the Asbestos PI Trust.

(Appellee Br., Ex. 6 (citing Combustion Appellee Br. 11, 13).) Thus, the issue presented

to the Third Circuit there mirrors the issue presented to the District Court here. After considering the same arguments, the Third Circuit decided to "agree with the District Court."

LMI contends that Combustion Eng'g can be distinguished from the instant matter because it focused on the transfer of insurance proceeds, not insurance rights. (LMI Reply Br. 4.) This argument must be rejected. Both the Bench Opinion of the Combustion Eng'g District Court and the subsequent appellate briefing demonstrate that *insurance rights* were, in fact, a focal point of the case. (See supra Appellee Br., Ex. 4-6) Moreover, the Third Circuit specifically referred to the transfer of "interests" in footnote 27, albeit in the context of § 541(c)(1). See Combustion Eng'g, 391 F.3d at 219 n. 27 ("Section 541 effectively preempts any contractual provision that purports to limit or restrict the rights of a debtor *to transfer or assign its interests* in bankruptcy.") (emphasis added). The Circuit Court then provided the appropriate mechanism to include such "interests" in a plan, when it detailed § 1123(a)(5)(B) in that same footnote. Id. According to Webster's, an "interest" is defined as a "right, title, or legal share in something." Webster's Third International Dictionary 1178 (1981). Interests or rights, as Appellees correctly noted during oral argument, are intangible property, see 11 U.S.C. § 541, that can be transferred from a bankruptcy estate to a § 542(g) trust, pursuant to § 1123(a)(5)(B).

> [W]e're talking about transferring property of the estate and property is hornbook law and real property and other forms of property, that includes intangible and anything ... that a debtor has ... the ability to assert contractual or other entitlement too [*sic*].

(Hr'g Tr. 106:4-9.)

-20-

Thus, the record before the Court and the Third Circuit's opinion in Combustion Eng'g plainly demonstrate that insurance rights were at issue. LMI's attempts to distinguish the case on this point is unavailing.

In a similar vein, Certain Appellants ask this Court to reject Combustion Eng'g because they contend that the Third Circuit would not have broken with its "sister Court of Appeals" on a "substantial question of federal law" without any more than a brief passage and a footnote. (See Hr'g Tr. 134:16-21.) Certain Appellants refer the Court to Pacific Gas, a Ninth Circuit case that was decided one year before Combustion Eng'g. See Pacific Gas, supra. Although sensible, this contention must also be rejected. In its reduced form, Certain Appellants essentially contend that the Third Circuit did not mean what it said. But as demonstrated above, the issue before that Court, and the opinion it subsequently rendered, was straightforward and unambiguous.

A brief examination of the precise issue before the Ninth Circuit in Pacific Gas is beneficial. See 350 F.3d 932, 946 (9th Cir. 2003). There, the Circuit Court confronted an argument that called for breathtakingly broad preemptive powers. See Pacific Gas, 350 F.3d at 937 (referring to the Bankruptcy Court's characterization of the preemption strategy as an "across-the-board, take-no-prisoners preemption strategy."). Specifically, the plan proponents contended that § 1123(a) preempted the regulatory authority of the California Public Utility Commission, including its power to authorize the construction of facilities. Pacific Gas, 350 F.3d at 936. The proponents also contended that § 1123(a) preempted other state and local agencies' powers to grant licenses or permits. Id. As discussed more fully below, see Part IV.B.ii.b infra, this expansive preemptive scope was rejected by the Ninth Circuit.

-21-

By contrast, in Combustion Eng'g—and in the present case—the Court confronted an argument that "Section 1123(a)(5)(B) of the Bankruptcy Code specifically preempts non-bankruptcy law restrictions on the ability of the Debtor to implement a plan of reorganization, *which, in this case, involves a transfer of rights from the Debtor's estate to the Asbestos PI Trust.*" (Appellee Br., Ex. 6.)  In other words, the contended scope of preemption was limited to anti-assignment provisions in insurance policies. (Id.)  The incongruity of the two situations may very well account for the succinct treatment of the assignment issue in Combustion Eng'g.  Whatever the reason, this Court refuses to second-guess the manner in which the Third Circuit constructed its opinion.

Even if the Court were to accept LMI and Certain Appellants contentions that the relevant passage in Combustion Eng'g is dicta, which it does not, this Court finds no reason to reject its precepts;  "[d]ictum from higher courts is entitled to deference by inferior courts and should not be disregarded except for good cause."  See Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C., 186 F. Supp. 2d. 567, 574 (E.D.Pa. 2002). In light of the foregoing, and considering the fact that several courts have found Combustion Eng'g to be controlling on the instant issue, no such cause exists.  See, e.g., In re Congoleum Corp., 2008 WL 4186899, *2-*3 (Bankr. D.N.J. Sept. 2, 2008) (holding that Combustion is controlling, and finding that "a plan of reorganization may assign policies to a personal injury trust despite the existence of anti-assignment clauses in those policies."); Hartford Accident & Indem. Co., et al., v. Global Indus. Tech., No. 07-1749 *13 (W.D.Pa. July 25, 2008) (referring to Combustion Eng'g as "controlling precedent", and consequently holding "that as a matter of bankruptcy law, assignment of the insurance policies to a personal injury trust does not violate anti-assignment

clauses in those policies.") (Notice of Supp'l Auth. Supporting Br.'s of Appellees, Ex. A.);
In re kaiser Aluminum Corp., 343 B.R. at 95 (D.Del. 2006) (relying on Combustion
Eng'g to conclude that "anti-assignment clauses in the Reorganizing Debtors' insurance
policies are preempted by the Bankruptcy Code."); see also In re Pittsburgh Corning
Corp., No. 00-22876 (Bankr. W.D.Pa. Dec. 21, 2006) (relying on Combustion Eng'g to
conclude that "[i]t is established in this circuit that assignment of policy proceeds is not
prohibited by anti-assignment provisions in insurance policies ... [O]nce an event occurs
that gives rise to the insurer's liability under the policy, the policy itself can be assigned.
PPG is assigning certain rights to proceeds.") (Appellee Br., Ex. 1.)

The Bankruptcy Court deemed Combustion Eng'g controlling precedent, see
Federal-Mogul, 385 B.R. at 567, and applying the de novo standard of review, this Court
does the same. As a result, the Court finds that § 1123(a)(5)(B) preempts the anti-
assignment provisions in the insurance policies at issue, which thereby permits the
transfer of insurance rights to the § 524(g) trust.

Although this conclusion effectively ends the matter, the parties advance several
additional arguments grounded in various methods of statutory interpretation. These
arguments touch on such matters as legislative history, maxims of statutory
construction, and public policy concerns. LMI and Certain Appellants advance the
statutory construct of § 1123(a) as determined by the Ninth Circuit. See Pacific Gas,
supra, 350 F.3d at 947 (holding that the preemptive scope of § 1123(a) is limited to laws
relating to a financial condition). For the sake of completeness, the Court examines
these arguments below.

*b. Statutory Arguments Regarding the Preemptive Scope of § 1123(a)*

Certain Appellants reason that because other portions of the Bankruptcy code expressly refer to "contracts" or "agreements" in addition to "applicable nonbankruptcy law", and § 1123(a) only refers to "applicable nonbankruptcy law", Congress must then have intended the preemptive scope of § 1123(a) to exclude contracts or agreements in this context. Specifically, Certain Appellants contrast § 1123(a) with, among others,  § 541(c)(1)–"notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law", § 363(l)–"notwithstanding any provision in a contract, lease, or applicable law", § 365(e)(1)–"notwithstanding a provision in an executory contract or unexpired lease, or applicable law". (See Certain Appellants Br. 20-21.) LMI agrees with this reasoning, and refers the Court to the statutory canon that states when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Public Citizen, Inc. v. U.S. Dept. of Health and Human Services, 332 F.3d 654, 664-65 (D.C. Cir. 2003) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

While this canon is persuasive and generally applicable, it should not apply here. A constricted view of § 1123(a) which does not allow for preemption of certain contractual provisions would essentially transform several subsections of § 1123(a)(5) into valueless surplusage. Appellees, for example, point to Subsections (a)(5)(F)–"cancellation or modification of any indenture or similar instrument", (a)(5)(H)–"extension of a maturity date or a change in an interest rate or other term of outstanding securities", (a)(5)(I)–"amendment of the debtor's charter", among others.

-24-

(Appellee Br. 27). Each of these subsections concerns or relates to contracts.

Moreover, the fact that § 1123(a) speaks only to "non bankruptcy law" is not dispositive, as LMI and Certain Appellants suggest. In an analogous situation, the Supreme Court held that an exempting phrase contained in 49 U.S.C. § 11341(a) that exempted carriers under the Interstate Commerce Act from "the antitrust laws and *all other law*, including State and municipal law", encompassed terms of a collective bargaining agreement. See Norfolk and Western Rye Co. v. American Train Dispatchers Ass'n, 499 U.S. 117, 128, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) (emphasis added). The Supreme Court concluded as much by reasoning that the phrase *all other law* "is broad enough to include laws that govern the obligations imposed by contract." Id. at 129. The Court further reasoned that "[t]he obligation of a contract is the law which binds the parties to perform their agreement", and, "[a] contract depends on a regime of common and statutory law for its effectiveness and enforcement." Id. at 129-30 (internal quotations omitted) (citations omitted).

The phrase "any otherwise applicable nonbankruptcy law" is similarly broad enough to encompass contractual obligations, like the instant anti-assignment provisions. Given that § 1123(a)(5) expressly includes subsections that directly concern or relate to contracts, the presumption that Congress purposely excluded private contracts or agreements from the preemptive scope of § 1123(a) is inapplicable here. See United States v. Miller, 527 F.3d 54, 62 (3d Cir. 2008) ("[L]egislative enactments should not be construed to render their provisions mere surplusage.") (quoting Dunn v. Commodity Futures Trading Commission, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997)). LMI and Certain Appellants' attempt to exclude private contracts from the

preemptive scope of § 1123(a) is consequently unavailing.

Next, LMI seeks haven in § 363(l) and § 365 of the Bankruptcy Code. Neither of these sections, it contends, permits the assignment of insurance rights to the § 524(g) trust. (LMI Br. 23, 38.) Appellees answer that § 363(l) and § 365 are "irrelevant here." (Appellee Br. 37.) The Court agrees; these sections do not apply to the present issue. As its title indicates, § 363 deals generally with the "use, sale, or lease of property". Subsection 363(l) then deals with limited situations where a contractual provision is "conditioned on the insolvency or financial condition of the debtor...*and* that effects, or gives a forfeiture, modification, or termination of the debtor's interest in such property." 11 U.S.C. § 363(l) (emphasis added). To be sure, the anti-assignment provisions are contractual provisions. But as the Bankruptcy Court below correctly observed, "Not all anti-assignment provisions are based upon a debtor's insolvency or financial condition." Federal-Mogul, 385 B.R. at 573. As a result, § 363(l) is inapplicable here.

With respect to § 365, that section of the Code deals with "executory contracts and unexpired leases." 11 U.S.C. § 365. LMI contends:

> The Bankruptcy Code contains no provisions allowing modification or assignment of non-executory contracts. Courts generally hold that insurance contracts are non-executory after expiration of the policy period. The policy periods of the London Policies have all expired. The Policies are non-executory and non-assignable.

(LMI Br. 38.) While the logic of this argument is sound, it overlooks the fact that § 365 deals with only "executory contracts", not "non-executory contracts." 11 U.S.C. § 365. The syllogism put forth by LMI concedes that the insurance policies at issue are non-executory. By LMI's own admission then, § 365 does not apply to the present issue.

As noted above, LMI and Certain Appellants also contend that § 1123(a) only

-26-

preempts any otherwise applicable nonbankruptcy law relating to financial condition.

(LMI Br. 32-33; Certain Appellants Br. 21-25.)  LMI and Certain Appellants base this

interpretation on Pacific Gas.  There, the Ninth Circuit read § 1123(a) ("Contents of a

plan") in pari materia with § 1142(a) ("Implementation of a plan"),[14] and consequently

held that the preemptive scope of § 1123(a) is limited to applicable nonbankruptcy laws

"relating to financial condition."  Id. 350 F.3d at 935.  The Circuit reached that result

despite the fact that nowhere in § 1123(a) do the words "relating to financial condition"

appear.  In practical terms then, the Ninth Circuit amends § 1123(a) by concluding that

it "must be" construed together with § 1142(a).  Id. at 942.

The Ninth Circuit supports this interpretation with legislative history.

Specifically, the Circuit Court relies on the floor remarks of Senator Dennis DeConcini,

then-Chair of the Subcommittee on Improvements in Judicial Machinery of the Senate

Judiciary Committee.  Id. at 943.  Senator DeConcini stated in relevant part:

> Section 1123 is also intended to indicate that a plan may provide for any
> action specified in section 1123 in the case of a corporation without a
> resolution of the board of directors.  If the plan is confirmed, then any action
> proposed in the plan may be taken notwithstanding any otherwise applicable
> nonbankruptcy law *in accordance with section 1142(a)* of title 11.

Id. at 941-42 (citing 124 Cong. Rec. 34005 (1978)) (emphasis added).

Setting aside the inherent infirmity of relying on the floor remarks of a single

---

[14]      11 U.S.C. § 1142(a) provides in relevant part:

Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation
*relating to a financial condition*, the debtor and any entity organized or to be
organized for the purpose of carrying out the plan shall carry out the plan and shall
comply with any orders of the court.

Id. (emphasis added).

senate subcommittee chairman as controlling authority, see In re Pelkowski, 990 F.2d 737, 743 (3d Cir. 1993) (noting that "the remarks of a single legislator are not controlling in analyzing legislative history") (citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 118, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)), this statement is not as outcome-determinative as the Ninth Circuit suggests.  To be sure, once the contents of a plan are assembled under § 1123(a), it must be the case that "any action proposed in the plan" is then taken "in accordance with § 1142(a)."  See Pacific Gas, supra, at 941-42.  After all, § 1142(a) is entitled "Implementation of a plan."  But it does not necessarily follow that the undisputed preemptive effect of § 1123(a) is thereby limited to laws "relating to financial condition"– words that do not even appear in the section.  Once again, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  Public Citizen, Inc., 332 F.3d at 664-65.  Unlike the previous dispute regarding whether "any otherwise applicable nonbankruptcy law" preempts private contracts, see supra, here, there is no context or evidence sufficient to rebut this generally applicable presumption.  As a result, this canon of statutory interpretation supports the Court's judgment that § 1123(a) is not limited to laws relating to financial condition.

To illustrate, the relevant "notwithstanding" clause was added by amendment to § 1123(a) in 1984.  See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 507, 98 Stat. 333, 385 (1984).  At the time, the phrase "relating to financial condition" was already included in § 1142(a).  Id.  In fact, the phrase had been present in § 1142(a) since 1978.  Id.  During this amendment process, it must be

-28-

presumed that Congress was aware of the fact that § 1142(a) contained the phrase "relating to financial condition", while § 1123(a) did not. Upon seeing this discrepancy, Congress could have adopted an additional amendment to § 1123(a) to include the phrase "relating to financial condition". It did not.

Moreover, even if the Court follows LMI and Certain Appellants' directive and construes Sections 1142(a) and 1123(a) together, which it should not, the limiting phrase "relating to financial condition" would only limit the single word "regulation", not the entire phrase "any otherwise applicable nonbankruptcy law". This conclusion is consistent with the statutory maxim known as the "rule of the last antecedent." See Barnahrt v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.")). In other words, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows." Adamowicz v. Internal Revenue Service, 552 F. Supp. 2d. 355, 367 (S.D.N.Y. 2008) (quoting United States v. Kerley, 416 F.3d 176, 180 (2d Cir. 2005) (internal quotations omitted)).

Under LMI and Certain Appellants' interpretation, § 1123(a) would read in relevant part, "notwithstanding any otherwise applicable nonbankruptcy law, rule, or *regulation relating to financial condition*". In short, the qualifying phrase–relating to financial condition–would only modify the last word–regulation. This construction not only makes grammatical sense, it also comports with the subsections contained in § 1123(a)(5). As Appellee points out, subsections (a)(5)(H)–"extension of a maturity

-29-

date…" and (a)(5)(I)—"amendment of the debtor's charter", have nothing to do with laws or regulations relating to financial condition. (See Appellee Br. 31.) To read in LMI and Certain Appellants' limitation without this principle of construction, therefore, is to read out these subsections from § 1123(a)(5). This Court will not do so, especially given the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc., v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (internal quotation marks omitted).

In the face of ample Third Circuit precedent and guiding principles of statutory construction, the Court is not persuaded to change course based solely on a Ninth Circuit decision that overlooks the plain meaning of the statute. Candidly, courts are reluctant to find preemption in an area traditionally occupied or regulated by the states. This reluctance results in a presumption against preemption in these areas, see Cippollone, 505 U.S. at 518, which includes the insurance context. (See Certain Appellants Br. 24.) Nevertheless, "that presumption can be overcome where, as here, Congress has made clear its desire for preemption." See Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 151, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (finding preemption in the family law context where conflict is evident with ERISA).

Indeed, it is difficult to imagine a clearer manifestation of a desire to preempt than the one present here. Cf. Integrated Solutions, Inc., 124 F.3d at 493. The relevant portion of the statute reads, "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall provide adequate means for the plan's implementation, such as transfer of all or any part of the property of the estate to one or more entities…" 11 U.S.C. §

-30-

1123(a)(5)(B). Included in the vast realm of "property" are such intangible items as the insurance rights in this case. Accordingly, the relevant anti-assignment provisions which would otherwise prevent such transfer, are preempted by § 1123(a) and § 541(c)(1).

LMI and Certain Appellants' attempt to escape the plain meaning of the statute is unavailing. In their briefing and during oral argument, LMI and Certain Appellants suggest a parade of horribles will result if the Court finds preemption in this limited context. Referring to the Bankruptcy Court's initial decision in Pacific Gas, see 273 B.R. 795, 806 (Bankr. N.D.Cal. 2002), they contend that a plain reading of the statute would allow selling liquor to minors, trading with foreign enemies, dumping toxic wastes, retaining unlawful controlled substances such as drugs or explosives, or creating monopolies—all in contravention to federal or state laws. (LMI Br. 26; Hr'g Tr. 52, 56.)

To be sure, "[a] basic tenet of statutory construction is that courts should interpret a law to *avoid* bizarre or absurd results." In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006) (emphasis added). But one cannot avoid something if that something is not there in the first place. The Court is unpersuaded that the aforementioned parade of horribles—constrained only by imagination—is likely to occur. As Appellees correctly point out, the contents of a plan "must otherwise comply with all other applicable requirements in the Bankruptcy Code, *and* be approved by a Bankruptcy Court to become effective." (Appellees Br. 33.) Section 1129(a)(1), for example, provides in relevant part that "the Court shall confirm a plan only if ... the plan complies with the applicable provisions of this title." Given the unique circumstances of Pacific Gas, where the plan proponents tested the margins of § 1123(a) by boldly

-31-

contending that the public utility and environmental regulatory authority of California was preempted, it is no wonder that the Bankruptcy Court found solace in this parade of horribles argument. Indeed, the Bankruptcy Court in <u>Pacific Gas</u> contrasted its finding with the Fourth Circuit in <u>FCX</u> by noting that "the court ... was not faced with anything similar to relief sought by Proponents in this case..." <u>Pacific Gas</u>, 273 B.R. at 815.

It is telling that when presented with a more limited preemptive scope, a Bankruptcy Court sitting in the Ninth Circuit allowed the very transfer of insurance rights that this Court allows in the present case, one year after <u>Pacific Gas</u> was decided. <u>See</u> <u>In re Western Asbestos Co.</u>, 313 B.R. 456, 462 (Bankr. N.D.Cal. 2004) ("Debtors' policies, rights under the policies, or proceeds derived from the policies (collectively, "Insurance Rights") may be vested in the Trust pursuant to Bankruptcy Code section 1123(a)(5)(B), notwithstanding any state law or private contractual provisions to the contrary..."). This persuasive precedent lends support to the Court's conclusion on the present issue.

Nevertheless, Certain Appellants maintain there must be a limiting principle. In fact, they offered one at oral argument:

> [T]he words of 1123(a) should be given their more natural reading. The notwithstanding language that is there, and we don't run from it at all. It should be read to apply only to the eight requirements set forth in the section, and no further ... It's the 10 permissive transactions that are listed under (5) where we don't ... believe that the notwithstanding any otherwise applicable non-Bankruptcy law reaches ...

(Hr'g Tr. 53:8-13, 55:15-19.) Far from being the "more natural reading", however, this reading asks the Court to close its eyes to a significant portion of the statute. Specifically, Certain Appellants ask the Court to read the preemption language of §

1123(a)– "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall–"

down the statute until the end of Subsection(a)(5) where it states, "such as–", skip

subsections (a)(5)(A) through (a)(5)(J), and then resume reading the preemption

language downward from Subsection (a)(6) until the end of Subsection (a)(8). Certain

Appellants contend this approach must be correct because the ten examples included

after "such as–" are illustrative only. By contrast, the eight elements that immediately

follow § 1123(a) are "required elements." (Hr'g. Tr. 47:24.) It follows, they contend,

that

> [t]he statute does not merely by including the example of non-required
> transactions [under § 1123(a)(5)], that may be used to implement a plan,
> affect a whole preemption of all non-Bankruptcy law that might otherwise
> govern those transactions.

(Id. at 48:8-12.)

There are two major problems associated with reading the statute as suggested by

Certain Appellants, apart from the fact that it contravenes a plain reading of the text.

First, it essentially reads Subsection (a)(5) out of the statute. By disallowing preemption

to occur in the illustrative examples provided in Subsections (a)(5)(A) - (J), Subsection

(a)(5) is rendered effectively meaningless. Under their approach, preemption can occur

so as to "provide adequate means for the plan's implementation", see 11 U.S.C. §

1123(a)(5), but the "adequate means" themselves, like "satisfaction or modification of

any lien"–§ 1123(a)(5)(E), or "curing or waiving of any default"–§ 1123(a)(5)(G), would

never be able to override "any otherwise applicable nonbankruptcy law"–§ 1123(a). The

phrase "provide adequate means" then, becomes an impotent and amorphous term in

the Bankruptcy Code. This result is not desirable.

Secondly, this statutory approach may facilitate the very parade of horribles that Certain Appellants and LMI fear. Rather than acting as a limiting principle, as they contend, the phrase "provide adequate means for the plan's implementation" would be unmoored from its "such as–" clause, thereby permitting an expansively broad view of the phrase. Surely Certain Appellants and LMI would reject such a result, when in its present context, the phrase is "narrowed by the commonsense canon of noscitur a sociis–which counsels that a word [or phrase] is given more precise content by the neighboring words with which it is associated." See United States v. Williams, 128 S. Ct. 1830, 1839, 170 L.Ed.2d 650 (2008) (citing 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction § 47.16 (7th ed. 2007))(alteration to original quote).

In any event, this Court need not decide an appropriate limiting principle when the relief sought by Appellees falls within the heartland of § 1123(a). Cf. Nat'l Cable & Telecomms. Ass'n v. Gulf Power Co., 534 U.S. 327, 341-42, 122 S.Ct. 782, 151 L.Ed.2d 794 (2002). In that case, the Supreme Court dealt with a similar contention. Id. Specifically, the respondents there contended that a literal reading of The Pole Attachment Act, see 47 U.S.C. § 224 (1994 ed.), produced absurd results and therefore required a limiting principle. Id. at 341. The Supreme Court rejected the notion that a limiting principle was required, because under its views, the attachments at issue "did not test the margins of the Act", but rather, fell "within the heartland." Id. at 342. Although not directly on point, this reasoning is instructive for the Court's purposes here. In light of the ample precedent on this issue, and in the Court's own judgment, preemption of anti-assignment provisions in applicable insurance policies falls within the heartland of a bankruptcy reorganization plan, so as to allow insurance rights to be

-34-

transferred to the § 524(g) trust. This conclusion is especially true given the context of the instant case. See, e.g., Combustion Eng'g, 391 F.3d at 234 (noting the "unique problems and complexities associated with asbestos liability."). Accordingly, the Court need not announce a limiting principle that is superfluous to the present issue.

### iii. Public Policy

If more is needed, the conclusion that the assignment of insurance rights is valid and enforceable against the Insurers notwithstanding anti-assignment provisions incorporated in the policies is consistent with public policy. Generally speaking, an insurance policy may be assigned after the events giving rise to the loss or liability have occurred. The Bankruptcy Court below noted as much, and proceeded to cite several cases supporting this principle. See, e.g., R.L. Vallee, Inc. v. American Intern. Specialty Lines Ins. Co., 431 F. Supp. 2d 428, 435 (D.Vt. 2006) (noting that assignments after loss are permitted as there is no additional risk to insurer and anti-assignment clauses that operate after a loss to limit the free assignability of claims are disfavored); Viola v. Fireman's Fund Ins. Co., 965 F. Supp. 654, 658 (E.D.Pa. 1997) (recognizing that "under Pennsylvania law, an insurer may not limit an insured's ability to assign … rights under a policy after the occurrence of the event which gives rise to the insurer's liability."); see also, Egger v. Gulf Ins. Co., 903 A.2d 1219, 1224, 588 Pa. 287 (Pa. 2006) (referring to the permissibility of post-loss assignments as the "general rule"). These cases were not cited in error, as LMI suggests, (see LMI Br. 16); instead, these cases were cited to show that "there will be no additional risk to the insurance companies by virtue of the assignments." See Federal-Mogul, 385 B.R. at 567.

According to Couch:

-35-

> The purpose of a no assignment clause is to protect the insurer from
> increased liability, and after events giving rise to the insurer's liability have
> occurred, the insurer's risk cannot be increased by a change in the insured's
> identity.

G. Couch, Cyclopedia of Insurance Law § 35.7 (3d ed. 1995). Thus, it is evident that

Appellants have no economic incentive to prevent this assignment, particularly whereas

here, the events creating exposure to asbestos liability have already occurred. The §

524(g) trust is merely a successor in interest to the insured debtor, Federal-Mogul

Global, Inc. LMI and Certain Appellants are still entitled to assert any applicable

"Asbestos Insurer Coverage Defense" pursuant to the Fourth Am. Joint Plan of

Reorganization. (See App. 196.)

Moreover, Appellees are correct when they contend that a contrary result would

result in a windfall for the Appellants. (See Appellee Br. 39.) The § 524(g) trust was

created in part to help stem the overwhelming weight of asbestos litigation on

businesses. If this Court were to hold that, as a result of anti-assignment provisions,

insurance rights could not be transferred into a § 524(g) trust, then debtors with

sizeable insurance assets could never avail themselves of the very trust meant to

alleviate the situation. See H.R. Rep. No. 103-835 at 41, reprinted in 1994 U.S.C.C.A.N.

3340, 3350 (1994) (noting that the "asbestos trust injunction/mechanism established in

the bill [§ 524(g)] is available for use by any company facing ... overwhelming liability"

from asbestos litigation).

A contrary result would relieve the insurer of responsibility by permitting only

the liabilities to enter the trust without the concomitant rights or coverage to pay for

them. This result is akin to a veto power for the insurance company over an insured or

debtor, prohibiting the formation of a § 524(g) trust, particularly where the insurance

policy is the only remaining sizeable asset for the company in bankruptcy.  As put by the

Future Claimants Representative during oral argument:

> [T]he practical implication of depriving the Trust of insurance rights clearly
> would be to the direct negative impact of future claimants, and those are
> precisely the claimants that 524(g) was enacted to protect.

(Hr'g Tr. 110:23-25, 111:1-2.)  The Court is confident that its interpretation of § 1123(a)

avoids this antagonistic result.  Accord H.R. Rep. 103-835 at 40, reprinted in 1994

U.S.C.C.A.N 3340, 3349 (1994) ("The Committee remains concerned that full

consideration be accorded to the interests of future claimants, who, by definition, do not

have their own voice.").

## V. CONCLUSION

For the foregoing reasons, the anti-assignment clauses in the relevant insurance

policies are preempted by 11 U.S.C. § 1123(a)(5)(B).  The transfer of insurance rights,

therefore, are valid under § 524(g), § 541(c)(1), § 1123(a)(5)(B), and § 1129(a)(1) of the

United States Bankruptcy Code.  Having made this determination, the judgment of the

Bankruptcy Court is affirmed.

Joseph H. Rodriguez
U.S.D.J.

Dated: March 24, 2009

-37-